**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVE SCARDINA, individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | 11-cv-3149 |
| v. | ) ) | Judge George W. Lindberg |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING LLC; ENCORE CAPITAL GROUP, INC, | ) ) ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Dave Scardina ("Plaintiff") has requested that this Court enter an order determining that this action may proceed as a class action against defendants Midland Credit Management, Inc., ("MCM"), Midland Funding LLC ("Midland"), and Encore Capital Group, Inc. ("Encore") (collectively "Defendants").

Plaintiff seeks to certify a class, defined as follows: (a) all persons with cellular numbers in the Illinois area codes (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) received automated calls from defendant (d) where defendant's records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

This memorandum is submitted in support of plaintiff's motion.

**I.     NATURE OF THE CASE**

In an effort to collect a credit card debt, Defendant MCM played at least 16 automated calls to Plaintiff's cell phone. Plaintiff did not consent to the calls or provide his cell phone number to either Defendants or the creditor. Rather, the cell phone number was attained through skip tracing.

The robo calls continued despite written and oral requests that they cease. The calls are obviously automated, leaving such messages as:

    a.    "(Music Plays)." Call transferred to a live person who said only, "Hello." The call was then disconnected.

    b.    "Hi Dave, Dave Scardina, hello?" The call was then disconnected.

    c.    "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly. (Music Plays). We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays). Thank you for your patience. Your call is now next in line. We will connect you in just a moment. (Music Plays)." The call was then transferred to a live person who stated only, "Hello Dave, Mr. Scardina?" The call was then disconnected.

    d.    "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly. (Music Plays). We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays).The call was then transferred to a live person who stated, "Hello? [unintelligible]" The call was then disconnected.

    e.    "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly. (Music Plays). We

apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays). Thank you for your patience. Your call is now next in line. We will connect you in just a moment. (Music Plays)." The call was then transferred to a live person who only stated, "Hello. Hello." The call was then disconnected.

**II     STANDARD FOR CLASS CERTIFICATION**

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action  -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766).

In determining whether a class action will be allowed, the Court should resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing. *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); *accord*, *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977).

Recently, the Second Circuit noted that class actions allow for the aggregation of small claims held by many consumers. Denial of certification would lead to a situation where consumers holding a small claim would be less likely to pursue relief given the costs involved, to the benefit of businesses which, in violating the law, obtain a significant financial benefit from their actions without fear of meaningful litigation. *Ross v. Bank of America NA*, 524 F.3d 217 (2d Cir. 2008).

### III.     THE TELEPHONE CONSUMER PROTECTION ACT

Defendants violated the TCPA by placing automated calls to plaintiff's cell phone. The TCPA, 47 U.S.C. §227, provides:

> **§ 227.  Restrictions on use of telephone equipment**
>
> **. . . (b) Restrictions on use of automated telephone equipment.**
>
> **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**
>
>> **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**
>>
>>> **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

The TCPA, 47 U.S.C. §227(b)(3), further provides for a private right of action. Recently, classes in two TCPA cases involving predictive dialer telephone calls to cellular phones have been certified in the Northern District of Illinois. *Balbarin et. al. v. North Star Capital Acquisition, LLC et. al.*, 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011); *Mitchem v. Illinois Collection Service, Inc.*, 271 F.R.D. 617 (N.D. Ill. 2011).

Several other courts have certified junk fax class actions under the TCPA, as well. *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill., May 27, 2008); *Green v. Service Master on Location Services Corp.*, 07 C 4705, 2009 U.S. Dist. LEXIS 53297 (N.D. Ill. June 22, 2009); *CE Design v. Beaty Construction, Inc.*, 07 C 3340, 2009 U.S. Dist. LEXIS 5842 (N.D. Ill. Jan. 26, 2009); *Hinman v. M & M Rental Ctr.*, 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D. Ill., April 7, 2008); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F.Supp.2d 894 (N.D. Ill. 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D. Ill. Oct. 14, 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07 C

5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009); *CE Design v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D.Wash. 2007); *Gortho, Ltd., v. Websolv*, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions). The claim brought here – that defendants made unsolicited and automated phone calls to cellular phones – rests under the same law. The basic principle behind the prohibition is the same, too; consumers are entitled to not have unsolicited phone calls made to their cellular phones, and to not have to pay (through usage fees) for those unsolicited calls.

## IV. THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A. Rule 23(a)(1) -- Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Driver v. AppleIllinois LLC*, 265 F.R.D. 293, 300 (N.D.Ill. 2010) held that

> **plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. See *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. See *Hispanics United of DuPage Co. v. Village of Addison, Illinois*, 160 F.R.D. 681, 688 (N.D.Ill. 1995)** (quotations and citations omitted).

*Perdue v. Individual Members of the Indiana Board of Bar Examiners*, 266 F.R.D. 215, 218 (S.D.Ind. 2010), noted that

5

> **the Seventh Circuit has not provided specific guidance about when a putative class is large enough to satisfy the numerosity requirement. However, in [*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)], the court assumed that fourteen individuals would be insufficient... Similarly, in *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006), the court noted that "joinder of fewer than 40 workers... would be practical" so class certification was inappropriate.**

This is in line with the basic presumption that joinder of more than 40 persons is generally considered impractical. *Hale*, *supra*, 264 F.R.D. at 404-405 (N.D.Ill. 2009) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)).

The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination.... Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 <u>Newberg on Class Actions</u> (3d ed. 1992), §7.22.A.

It is reasonable to infer that the number of class members in each class exceeds the approximately 40 required for certification. Debt collection companies generally acquire portfolios consisting of numerous similar debts, rather than individual debts. At issue are systematic prerecorded telephone messages regularly used by defendant in attempt to collect debts from consumers. Plaintiff alleges on information and belief that there are more than 40 members of the class. Furthermore, inexpensive predictive dialer equipment can cost between $20,000-$30,000, and it is only economical to buy it if calls are being made to more than 40 individuals. (<u>Exhibit A</u>, "New Telemarketing Device Allows a Type of Prank Call to Consumers," *Milwaukee Journal Sentinel (Wisconsin)*, August 27, 2000.) Based on this, it is reasonable to infer that the number of class members exceeds the approximately 40 required for certification. Finally, Encore has stated that . "During 2010, we called approximately 8.6 million unique consumers, of which 1.8 million, or 21%, made contact with us." (Encore Capital Group, Inc. report on SEC Form 10-K for the year

ending December 31, 2010, original page 4). If even 1% of the 8.6 million consumers called by Defendant MCM in 2010 are located in Illinois, that would amount to 86,000.

Plaintiff will obtain the exact number of class members in each class through discovery and requests a briefing schedule long enough to obtain such information.

    **A.**    **Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

> *Hale*, *supra*, 264 F.R.D. at 405, 407, held that
>
> **Commonality generally exists when the defendant has engaged in "standardized conduct" toward the members of the proposed class.** ***Smith v. Nike Retail Servs., Inc.*****, [234 F.R.D. 648, (N.D. Ill. 2006). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."** ***Rosario v. Livaditis*****, 963 F.2d 1013, 1017 (7th Cir. 1992). ...**
>
> **Rule 23(b)(3)'s predominance requirement is typically satisfied where the central, common issue is whether the defendant's form letter violates the FDCPA. See** ***Quiroz v. Revenue Production Mgmt., Inc.*****, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (finding that predominance was satisfied where the common question was whether the defendant's form letter violated §1692e); see also** ***Day v. Check Brokerage Corp.*****, 240 F.R.D. 414, 418-19 (N.D. Ill. 2007) (finding that predominance was satisfied where class members received "very similar" letters, and the common legal issue was whether those letters violated the FDCPA);** ***Jackson v. Nat'l Action Fin. Servs., Inc.*****, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (same).**

More generally, *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974) held that satisfaction of the predominance requirement of Fed.R.Civ.P. 23(b)(3) "normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?" *Accord*, *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D.Ill. 1995). See *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 506-507 (S.D.Ind. 2007) (similar).

In this case, the essential fact that links all class members is that defendants engaged in a pattern of using automated equipment to place calls to cellular telephones without the authorization of plaintiff or class members.

The only individual issue is the identification of the members of each class, a matter capable of ministerial determination from defendant's records. Questions readily answerable from a defendant's files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) found that the commonality and predominance requirements were met even though there were individual questions of injury and damages; those questions could be answered "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank." *Accord*, *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 347 (N.D.Ill. 2008) ("some factual variation among the class grievances will not defeat a class action.... so long as those individual issues are manageable through bifurcated hearings or some other mechanism that allows the common issues to be adjudicated together").

With respect to classes certified in TCPA cases involving calls from predictive dialers to cellular telephones, Courts have held that individual issues do not predominate over questions of law or fact common to all members of a class. In *Balbarin et. al. v. North Star Capital Acquisition, LLC et. al.*, 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), the Court held that the matter of whether calls to class members "were placed individually, rather than 'blasted' in a single transmission to multiple numbers, is immaterial.... The salient point is that .... the numbers called were allegedly obtained .... without the consent of the called party." In *Mitchem v. Illinois Collection Service, Inc*., 271 F.R.D. 617 (N.D. Ill. 2011), the defendant, a collection agency, opposed class certification on the grounds that, among other things, "....the individual issue of consent predominates over any common issues...." The Court rejected this objection.

The Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v.*

*Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

B.  **Rule 23(a)(3) -- Typicality**

Fed.R.Civ.P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the class. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." (Citation and internal quotation marks omitted.) *Accord*, *Driver*, *supra*, 265 F.R.D. at 304.

In the instant case, typicality is inherent in the class definitions. By definition, the members of the classes were subjected to the same practices as the plaintiff, and thus suffered the same violations of the TCPA that plaintiff suffered.

C.  **Rule 23(a)(4) -- Adequacy of representation**

The rule also requires that a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) a plaintiff must not have interests antagonistic to those of the class. *Rosario*, *supra*, 963 F.2d at 1018. *Accord*, *Hale*, *supra*, 264 F.R.D. at 406.

Both of these considerations are satisfied here. Plaintiff understands the obligations of a class representative, and has retained experienced counsel – as is indicated by Exhibits B and

C, which set forth counsel's qualifications. Further, both plaintiff and members of the class seek money damages and an injunction to prevent future impermissible calls as the result of defendants' unlawful robo calling practices. Given the identity of claims between plaintiff and members of the class, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

### D.     Rule 23(b)(3) – Superiority

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Overall, in this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor. Individual cases are not economically feasible. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, persons from whom defendant is attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. *Zanni v. Lippold,* 119 F.R.D. 32, 35 (C.D. Ill. 1988).

**V.    CONCLUSION**

The proposed classes meet the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

                                                                        Respectfully submitted,

                                                                        s/ Cassandra P. Miller
                                                                        Cassandra P. Miller

Curtis C. Warner   (6282197)
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
         & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

       I, Cassandra P. Miller, hereby certify that on May 11, 2011, I caused to be filed the foregoing document via the CM/ECF System. I also caused the foregoing document to be served via process server upon the following:

Midland Funding LLC
c/o Corporation Service Co.
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

Midland Credit Management, Inc.
c/o Corporation Service Co.
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

Encore Capital Group, Inc.
8875 Aero Drive
Suite 200
San Diego, CA 92123

                                                                   s/ Cassandra P. Miller
                                                                   Cassandra P. Miller