IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVE SCARDINA, individually and on behalf of a class<br><br>Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, ENCORE CAPITAL GROUP, INC.<br><br>Defendant. | Case No.     11-cv-03149 |

**DEFENDANTS' ANSWER TO CLASS ACTION COMPLAINT AND AFFIRMATIVE DEFENSES**

Midland Credit Management, Inc. ("MCM"), Midland Funding LLC ("Midland"), and Encore Capital Group, Inc. ("Encore") (collectively "Defendants"), for their answer to the class action complaint and affirmative defenses, state:

**INTRODUCTION**

1. Plaintiff, Dave Scardina ("Plaintiff"), brings this action individually and on behalf of a class against Defendants Midland Credit Management, Inc., ("MCM"), Midland Funding LLC ("Midland"), and Encore Capital Group, Inc. ("Encore") (collectively "Defendants").

**ANSWER:** **Defendants admit Plaintiff purports to bring this action individually and on behalf of a class against Defendants and denies all remaining allegations contained in Paragraph 1.**

2. Defendant MCM, acting on behalf of Defendants Midland and Encore, impermissibly called Plaintiff's cell phone without his prior express consent using an automatic telephone dialing service and/or an artificial or prerecorded voice ("Predictive Dialer"), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

**ANSWER:** **Denied.**

## JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Interstate Commerce); and 47 U.S.C. § 227 ("TCPA") *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

**ANSWER:     Admitted.**

4.     Venue and personal jurisdiction over Defendant in this District is proper because:

a.     Plaintiff resides in the District;

b.     Defendant MCM transacts business in the District via the telephone system;

c.     Defendant MCM's phone calls to plaintiff registered an Illinois area code corresponding to 312 area code exchange;

d.     Defendant MCM is licensed as a collection agency by the Illinois Division of Professional Regulation, License Number 017020397;

e.     Defendant Midland Funding is licensed as a collection agency by the Illinois Division of Professional Regulation, License Number 017021204;

f.     Defendant MCM's activities complained of done on behalf of Defendants Midland and Encore occurred within the District.

**ANSWER:     Defendants admit venue and personal jurisdiction are proper and**

**a.     are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in sub-paragraph a;**

**b.     admits that MCM uses telephones and the mail to conduct business and deny all remaining allegations contained in sub-paragraph b;**

**c.     are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in sub-paragraph c;**

**d.     admitted;**

**e.     admitted;**

**f.     denied.**

## PARTIES

### Plaintiff

5. Plaintiff is an individual who resides in the Northern District of Illinois.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained Paragraph 5.**

### Midland Funding

6. Midland Funding is a limited liability company chartered under Delaware law. Midland is a subsidiary of Encore Capital Group, Inc.

**ANSWER: Admitted.**

7. Midland Funding is engaged in the business of taking title to charged-off consumer debts, including credit card, auto deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. (Encore's SEC filing on form 10-Q, Aug. 8, 2008).

**ANSWER: Defendants state that Encore's SEC filing on 10-Q, Aug. 8, 2008, speaks for itself, deny all allegations contained in Paragraph 7 that are inconsistent with that filing, and deny all remaining allegations contained in Paragraph 7.**

8. Midland Funding's affiliate Midland Credit Management, Inc. attempts to collect the alleged debts via correspondence and telephone calls. Midland Funding frequently files lawsuits to collect the debts. Midland Funding is the plaintiff in about 500 lawsuits per month in Cook County alone.

**ANSWER: Defendants admit that MCM attempts to collect debts via correspondence and telephone calls, admit that lawsuits are filed on behalf of Midland Funding related to debts, are without knowledge or information sufficient to form a belief as to the truth of whether Midland Funding is the plaintiff in about 500 lawsuits per month in Cook County alone because those allegations are vague regarding the time period and therefore denies same, and denies all remaining allegations contained in Paragraph 8.**

9. Midland Funding's principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123. Midland Funding's agent for the service of process in Illinois is Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

**ANSWER:   Admitted.**

10. Midland Funding is a debt collector as defined in the FDCPA.

**ANSWER:   The allegations contained in Paragraph 10 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

### Midland Credit Management

11. Defendant MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123. It is a subsidiary of Encore Capital Group, Inc. MCM transacts business in Illinois. MCM's agent for the service of process in Illinois is Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

**ANSWER:   Defendants admit that MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123, admit that MCM is a subsidiary of Encore Capital Group, Inc., admit that MCM's agent for the service of process in Illinois is Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703-4261, and deny all remaining allegations contained in Paragraph 11.**

12. Defendant MCM is a collection agency and collects the charged-off debts purchased by other entities within the Midland organization, described below.

**ANSWER:   Defendants admit that MCM may be considered a collection agency for some purposes, admit that MCM collects charged-off debts, are without knowledge sufficient to form a belief as to the truth of the remaining allegations because those allegations are vague and therefore denies same, and denies all remaining allegations contained in Paragraph 12, if any.**

13. Defendant MCM is a "debt collector " as defined in the FDCPA.

**ANSWER: Defendants admit that MCM may be considered a debt collector for some purposes and deny all remaining allegations contained in Paragraph 13.**

### Encore Capital Group

14. MCM and Midland Funding Corporation are under common ownership. Both are direct or indirect subsidiaries of Encore Capital Group, Inc., a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**ANSWER: Admitted.**

15. Encore raises money in public securities markets to acquire the debts which are transferred to Midland Funding or other similar entities and collected by MCM. Encore also is responsible for the overall collection strategies used to collect the accounts.

**ANSWER: Defendants admit that MCM collects debts acquired by other entities, admit that Encore participates in publicly held securities markets, and deny all remaining allegations contained in Paragraph 15.**

16. Encore's webpage states, "If you are one of our consumers, you probably know us as Midland Credit Management. Midland Credit Management is an Encore Capital Group subsidiary [.] " * * * "If you have received a letter or phone call from us, seen our name on your credit report, or received a letter or phone call from a law firm or collection agency acting on our behalf, it means that your obligation (credit card, auto loan, consumer loan, home or cell phone bill, student loan) to a lender is now your obligation to Midland, as a result of our agreement with that lender. Please give us a call or log into our site to create a repayment arrangement or discuss the status of your account. " http://www.encorecapital.com/consumers

**ANSWER: Defendants state that Encore's website speaks for itself and deny all remaining allegations contained in Paragraph 16.**

17. Encore describes itself as "a leading accounts receivable management firm" (Encore Capital Group Inc., Exhibit 99.1, filed with the SEC on March 15, 2006) and a "purchaser and manager of charged-off consumer receivables portfolios." (Encore Capital Group Inc., Form 424B3, filed March 1, 2011, prospectus summary)

**ANSWER:** **Defendants state that Encore's Exhibit 99.1, filed with the SEC on March 15, 2006, and Form 424B3, filed March 1, 2011, prospectus summary speak for themselves and deny all remaining allegations contained in Paragraph 17.**

18. On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios. " (Form 8-K filed by Encore with the SEC on March 10, 2005.)

**ANSWER:** **Defendants state that Encore's Form 8-K filed by Encore with the SEC on March 10, 2005, speaks for itself and deny all remaining allegations contained in Paragraph 18.**

19. Encore acquires portfolios for an average of about 3.3 cents on the dollar. "From inception through December 31, 2010, we have invested approximately $1.8 billion to acquire 33.0 million consumer accounts with a face value of approximately $54.7 billion." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p.1.)

**ANSWER:** **Defendants state that Encore's Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p.1, speaks for itself and deny all remaining allegations contained in Paragraph 19.**

20. Encore states that it is responsible for developing collection strategies. Its Form 10-K for the year ending December 31, 2010 states "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account. " (Original page 4)

**ANSWER:** **Defendants state that Encore's Form 10-K for the year ending December 31, 2010 speaks for itself and deny all remaining allegations contained in Paragraph 20.**

21. Among these strategies are outbound telephone calls. "During 2010, we called approximately 8.6 million unique consumers, of which 1.8 million, or 21%, made contact with us. " (Encore Capital Group, Inc. report on SEC Form 10-K for the year ending December 31, 2010, original page 4)

**ANSWER:** **Defendants state that Encore's Encore Capital Group, Inc. report on SEC Form 10-K for the year ending December 31, 2010, original page 4 speaks for itself and deny all remaining allegations contained in Paragraph 21.**

22. Similarly, in its Prospectus filed with the SEC on March 1, 2011, Encore Capital Group, Inc., stated ("Prospectus Summary"):

> **We are a systems-driven purchaser and manager of charged-off consumer receivable portfolios . . . We acquire receivable portfolios at deep discounts from their face values using our proprietary valuation process that is based upon an analysis of the individual consumer attributes of the underlying accounts. Based upon our ongoing analysis of these accounts, we employ a dynamic mix of collection strategies to maximize our return on investment. . . . Acquisitions of receivable portfolios are financed from operating cash flows and borrowings from third parties. . . .**
>
> **We have been in the collection business for 56 years and started purchasing portfolios for our own account approximately 19 years ago. . . .**
>
> **We have established certain relationships with credit card issuers, other lenders and resellers that allow us to purchase portfolios directly through negotiated transactions, and we participate in the auction-style purchase processes that typify our industry. In addition, we enter into "forward flow" arrangements in which we agree to buy receivables that meet agreed upon parameters over the course of the contract term.**
>
> **We evaluate each portfolio for purchase using the proprietary valuation and underwriting processes developed by our in-house team of statisticians. Unlike many of our competitors, which we believe primarily base their purchase decisions on numerous aggregated portfolio-level factors, including the originator, the type of receivables to be purchased, or the number of collection agencies the accounts have been placed with previously, we base our purchase decisions primarily on our analysis of the specific accounts included in a portfolio.**

7

> **Based upon this analysis, we determine a value for each account, which we aggregate to produce a valuation of the entire portfolio. We believe this capability allows us to perform more accurate valuations of receivable portfolios. We have successfully applied this methodology to receivables across multiple asset classes.**
>
> **After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection. As with our purchase decisions, our collection strategies are based on account level criteria. Our collection strategies include: . . .**
>
> **\* outbound calling, driven by proprietary, predictive software, by our own collection workforce located at our three domestic call centers and our international call center in India; . . .**

**ANSWER:** **Defendants state that Encore's Prospectus Summary speaks for itself and deny all remaining allegations contained in Paragraph 22.**

23.  Encore is a "debt collector " as defined in the FDCPA.

**ANSWER:** **Denied.**

## FACTS

24.  MCM in a letter dated April 27, 2011, informed Plaintiff in part that, "Midland Funding, LLC, has purchased your HSBC BANK NEVADA N.A. account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the new servicer of this obligation."

**ANSWER:** **Defendants state that the letter dated April 27, 2011 speaks for itself and denies all remaining allegations contained in Paragraph 24.**

25.  MCM uses at least one Automatic Dial Announcing Device which under Texas law is defined as any automated equipment used for telephone solicitation or collection that (1) is capable of storing numbers to be called, or has a random or sequential number generator capable of producing numbers to be called and (2) alone or in conjunction with other equipment, can convey a prerecorded or synthesized message to the number called without the use of a live operator.

**ANSWER:** **The allegations contained in Paragraph 25 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

8

26. MCM uses at least one "Predictive Dialer" as defined by the Federal Commutation Commission ("FCC").

**ANSWER:     The allegations contained in Paragraph 26 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

27. On information and belief, MCM's Predictive Dialer is capable of dialing telephone numbers without human intervention.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 27 because, among other things, the phrase "human intervention" is vague and undefined and therefore deny same.**

28. MCM's Predictive Dialer is capable of delivering an automated prerecorded message.

**ANSWER:     The allegations contained in Paragraph 28 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

29. Upon a phone call being answered by a live person, MCM's Predictive Dialer has the capability of transferring that phone call to a live operator.

**ANSWER:     The allegations contained in Paragraph 29 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

30. Plaintiff has a cellular telephone assigned the telephone number XXX XXX-0519. The first six digits of Plaintiff's cellular telephone number are redacted for privacy considerations.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 30 and therefore deny same.**

31. Plaintiff is the regular user of the cellular telephone and it is generally carried on his person.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 31 and therefore deny same.**

32. Plaintiff did not provide his cellular phone number to HSBC Bank Nevada N.A., the original creditor of the debt MCM was attempting to collect.

**ANSWER: Denied.**

33. On information and belief, Defendant obtained Plaintiff's cellular telephone number, XXX-XXX-0519, from HSBC Bank Nevada, N.A. who obtained it from United Recovery Systems, LP, who on or about October 15, 2010, obtained it from Experian. On information and belief, Experian informed United Recovery Systems, LP the telephone number XXX-XXX-0519 was a cell phone number.

**ANSWER: Denied.**

34. In a letter dated November 1, 2010, Plaintiff informed United Recovery Systems, LP, "Please stop calling my telephone number XXX-XXX-0519 for collecting the HSBC Bank account you tell me I owe: Account No.: XXXXXXXXXXXX7795", which according to the United States Postal Service was received by United Recovery Systems, LP, on November 4, 2010.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 34 and therefore deny same.**

35. Defendant MCM placed phone calls in an attempt to reach Plaintiff at the telephone number XXX-XXX-0519, at a minimum, on or about the following dates and times:

   a. April 27, 2011 at 8:19 a.m.;

   b. April 27, 2011 at 5:03 p.m.;

   c. April 28, 2011 at 8:11 a.m.;

   d. April 28, 2011 at 9:45 a.m.;

   e. April 29, 2011 at 10:13 a.m.;

   f. April 30, 2011 at 9:55 a.m.;

10

g. May 1, 2011 at 10:09 a.m.;

h. May 2, 2011 at 8:07 a.m.;

i. May 3, 2011 at 8:05 a.m.;

j. May 3, 2011 at 9:12 a.m.;

k. May 3, 2011 at 11:36 a.m.;

l. May 3, 2011 at 12:43 p.m.;

m. May 4, 2011 at 8:07 a.m.;

n. May 5, 2011 at 8:12 a.m.;

o. May 5, 2011 at 10:44 a.m.;

p. May 5, 2011 at 2:23 p.m.;

q. May 7, 2011 at 9:35 a.m.;

r. May 7, 2011 at 10:40 a.m.;

s. May 7, 2011 at 12:01 p.m.;

t. May 8, 2011 at 10:39 a.m.;

u. May 8, 2011 at 10:55 a.m.;

v. May 8, 2011 at 11:30 a.m.;

w. May 8, 2011 at 10:14 p.m.;

x. May 9, 2011 at 9:30 a.m.;

y. May 9, 2011 at 9:47 a.m.;

z. May 9, 2011 at 9:55 a.m.;

aa. May 10, 2011 at 8:03 a.m.;

bb. May 10, 2011 at 8:36 a.m.;

cc. May 10, 2011 at 8:52 a.m.; and

dd. May 10, 2011 at 9:06 a.m.

**ANSWER:** **Denied that MCM placed phone calls in an attempt to reach Plaintiff at the telephone number XXX-XXX-0519 on each of the dates and times contained in Paragraph 35.**

36. On information and belief, each phone call placed to Plaintiff by MCM was with the use of a Predictive Dialer, without a human hand manually dialing the telephone number.

**ANSWER:** **The allegations contained in Paragraph 36 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

37. For each of these phone calls above, Plaintiff's caller ID registered "000".

**ANSWER:** **Denied.**

38. Plaintiff answered the call made on or about April 27, 2011 at 5:03 p.m., and was informed by a live person that the call was from Midland Credit. In response, Plaintiff informed the caller to stop calling his telephone.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 38 and therefore deny same.**

39. MCM left the following messages for Plaintiff:

a. (Music Plays). Call transferred to a live person who said only, "Hello." The call was then disconnected.

b. "Hi Dave, Dave Scardina, hello?" The call was then disconnected.

c. (Music Plays). "All representatives are temporarily busy assisting other customers. Please continue to hold briefly." (Music Plays). "We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly." (Music Plays). "Thank you for your patience. Your call is now next in line. We will connect you in just a moment." (Music Plays). The call was then transferred to a live person who stated only, "Hello Dave, Mr. Scardina?" The call was then disconnected.

d. (Music Plays). "All representatives are temporarily busy assisting other customers. Please continue to hold briefly." (Music Plays). "We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly."

    (Music Plays). The call was then transferred to a live person who stated, "Hello? [unintelligible]." The call was then disconnected.

  e. (Music Plays). "All representatives are temporarily busy assisting other customers. Please continue to hold briefly." (Music Plays). "We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly." (Music Plays). "Thank you for your patience. Your call is now next in line. We will connect you in just a moment." (Music Plays). The call was then transferred to a live person who only stated, "Hello. Hello." The call was then disconnected.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 39 and therefore deny same.**

**COUNT I -- TCPA VIOLATION**

  40. Plaintiff incorporates paragraphs 1-39 above.

**ANSWER: Defendants incorporate answers to Paragraphs 1-39 above.**

  41. The Telephone Consumer Protection Act, 47 U.S.C. § 227 provides in pertinent part:

  **(b) Restrictions on use of automated telephone equipment.**

    **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-**

      **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice- * * ***

        **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

**ANSWER: Defendants state that the Telephone Consumer Protection Act, 47 U.S.C. § 227 speaks for itself and deny all remaining allegations contained in Paragraph 41.**

42. Defendant MCM did not have prior express consent to call Plaintiff's cellular telephone number XXX XXX-0519 using an automatic telephone dialing service and/or an artificial or prerecorded voice.

**ANSWER:** **Denied. By providing his cellular number to the creditor who originated the account at issue, Plaintiff gave express consent to call his cellular number.**

43. Plaintiff was the called party under the TCPA.

**ANSWER:** **Defendants object to the allegations contained in Paragraph 43 because (1) the phrase "called party" is vague and unintelligible, and (2) the allegations contain a legal conclusion for which no response is required.**

44. The phone calls placed by MCM to Plaintiff's cellular telephone number violated the TCPA.

**ANSWER:** **The allegations contained in Paragraph 44 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

45. Defendant Midland Funding, as the owner of the debt, is vicariously liable for MCM's violations of the TCPA.

**ANSWER:** **The allegations contained in Paragraph 45 call for a legal conclusion to which no answer is required, however, if an answer is required, Defendants deny same.**

46. Encore Capital Group, Inc. raised the capital used to finance predictive dialing equipment used by MCM, directed MCM to use the equipment, and is liable for its participation in the collection activities.

**ANSWER:** **Denied.**

## CLASS ALLEGATIONS

47. Plaintiff brings this class action seeking damages on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

**ANSWER: Defendants admit that the Plaintiff purports to bring this class action seeking damages on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) and deny all remaining allegations contained in Paragraph 47.**

48. Plaintiff also brings this class action seeking declaratory and injunctive relief to prohibit defendant from placing future telephone calls with an automatic telephone dialing service and/or an artificial or prerecorded voice to persons who did not provide prior express consent for their cellular telephone number to be called by Defendant.

**ANSWER: Defendants admit that the Plaintiff purports to bring this class action seeking declaratory and injunctive relief to prohibit defendant from placing future telephone calls with an automatic telephone dialing service and/or an artificial or prerecorded voice to persons who did not provide prior express consent for their cellular telephone number to be called by Defendant and deny all remaining allegations contained in Paragraph 48.**

49. The class consists of (a) all persons with cellular numbers in the Illinois area codes (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) received automated calls from defendant (d) where defendant's records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER: Denied.**

50. There are questions of law and fact common to the members of the class, which common questions predominate over any questions relating to individual class members.

**ANSWER: Denied.**

15

51. The predominant question is whether calling persons' cellular telephone with an automatic telephone dialing service and/or an artificial or prerecorded voice without prior express consent violates the TCPA, and whether that conduct was willful.

**ANSWER:** **Denied.**

52. Plaintiff's claims are typical of the claims of the class members in that the alleged violations are all based on the lack of prior express consent.

**ANSWER:** **Denied.**

53. The class is so numerous that joinder of all the members is impractical.

**ANSWER:** **Denied.**

54. On information and belief, there are 40 persons who are identified by the class definition above.

**ANSWER:** **Denied.**

55. If even 1% of the 8.6 million consumers called by defendant MCM in 2010 are located in Illinois, that would amount to 86,000 persons.

**ANSWER:** **Defendants admit that 1% of 8.6 million equals 86,000 and deny all remaining allegations contained in Paragraph 55.**

56. Plaintiff will fairly and adequately represent the members of the class.

**ANSWER:** **Denied.**

57. Plaintiff has retained experienced counsel in TCPA matters and class action litigation.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief regarding the allegations contained in Paragraph 57 and therefore deny same.**

58. A class action is superior for the fair and efficient adjudication of this matter in that:

   a. Defendant's course of conduct affects a large group of individuals;

   b. Multiple individual actions are not judicially economical; and

   c. The Class members are unaware that their rights have been violated.

**ANSWER:** **a.** **Denied.**

**b.** **Denied.**

**c.** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in sub-paragraph c and therefore deny same.**

## AFFIRMATIVE DEFENSES

Further answering the Complaint, and as additional defenses thereto, Defendants incorporate by reference the foregoing answers as though fully set forth herein, without assuming the burden of proof where such burden is otherwise on Plaintiffs as a matter of applicable substantive procedural law, and further allege as follows:

### FIRST DEFENSE

Plaintiff lacks standing to bring the claims as alleged in the Complaint, either individually, or on behalf of the putative class.

### SECOND DEFENSE

Defendants are not liable under the TCPA because MCM's technology does not constitute an "automatic telephone dialing system," nor does it use a "random or sequential number generator" to store or produce telephone numbers, as defined under 47 U.S.C. § 227(a)(1).

## THIRD DEFENSE

Plaintiff's consented to receive prerecorded message calls and auto-dialed calls on his cell phone, and as such, his claim is barred. 47 U.S.C. § 227(b)(1); Federal Communications Commission Declaratory Ruling, FCC 07-232, ¶ 9.

## FOURTH DEFENSE

To the extent that the underlying loan documents signed by Plaintiff or any putative class members require arbitration, Plaintiff's and/or such putative class members' claims are subject to mandatory arbitration.

## FIFTH DEFENSE

Defendants expressly and specifically reserve the right to amend this Answer to add, delete, or modify affirmative defenses based on legal theories, facts and circumstances which may or will be developed through discovery or further legal analysis of Plaintiff's and the putative class's claims and Defendants' position in this litigation.

WHEREFORE, defendants, Midland Credit Management, Inc., Midland Funding LLC, and Encore Capital Group, Inc., respectfully request the Court enter an order granting judgment in its favor and against Plaintiff on all claims, awarding MCM its fees and costs, and for any other relief this Court deems just.

Dated: July 6, 2011                         Respectfully submitted,

**MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, AND**
By: **ENCORE CAPITAL GROUP, INC.**

 s/Renee L. Zipprich
Renee Zipprich (rzipprich@dykema.com)
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois  60606
Phone: 312-876-1700
Fax:     312-627-2302

Theodore W. Seitz (tseitz@dykema.com*)*
DYKEMA GOSSETT PLLC
Capitol View
201 Townsend Street, Suite 900
Lansing, Michigan  48933
Phone: (517) 374-9100
Fax:     (517) 374-9191

## **CERTIFICATE OF SERVICE**

I hereby certify that on **July 6, 2011**, I electronically filed the foregoing **Answer to Class Action Complaint and Affirmative Defenses** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Curtis C. Warner
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Suite 560
Chicago, IL 60601
(312) 238-9820 – tel.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Edelman Combs Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
312 739-4200

                                                   s/Candace A. Mandel

CHICAGO\3299271.1
ID\ARJ - 097356/0103