**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVE SCARDINA, individually and on behalf of a class, | |
| Plaintiff, | Case No. 11-cv-3149 |
| vs. | The Honorable George W. Lindberg |
| MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, ENCORE CAPITAL GROUP, INC., | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY

Defendants, Midland Credit Management, Inc., Midland Funding LLC, and Encore Capital Group, Inc. ( "Defendants"), respectfully move this Court to stay all proceedings in this matter, including discovery, pending: (1) a decision by the United States Supreme Court in *Mims v. Arrow Financial Services, LLC*, No. 10-12077, 2010 WL 4840430 (11th Cir. Nov. 30, 2010), *cert. granted*, --- S. Ct. ----, 2011 WL 1212225 (June 27, 2011), which will dictate whether this Court can exercise subject matter jurisdiction over Plaintiff's Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1) ("TCPA"), claim; (2) resolution by the Federal Communications Commission's ("FCC") rulemaking proceedings related to the exact statutory provision under the TCPA at issue here; and (3) resolution of whether this case will be deemed related to *Martin v. Midland Funding, LLC*, Case No. 11-cv-03104 (N.D. Ill.), filed prior to this action and currently pending in this District before the Honorable Judge Charles P. Kocoras.

## INTRODUCTION

Plaintiff David Scardina's ("Scardina") putative class action, brought under the TCPA, should be stayed for three separate reasons:

*First*, on June 27, 2011, the United States Supreme Court granted certiorari to resolve inconsistent rulings among several federal courts of appeal as to whether Congress divested the federal district courts of their federal-question jurisdiction over private actions brought under the TCPA. *See Mims v. Arrow Fin. Servs., LLC*, No. 10-12077, 2010 WL 4840430 (11th Cir. Nov. 30, 2010), *cert. granted*, --- S. Ct. ----, 2011 WL 1212225 (June 27, 2011). An affirmative ruling by the Supreme Court will divest this Court of jurisdiction over this claim.

*Second*, the matter should also be stayed under the doctrine of primary jurisdiction because it raises issues that are being considered by the FCC in connection with an ongoing rulemaking proceeding. Courts regularly stay cases – like this one – that implicate issues that are the subject of pending administrative rulemaking proceedings. To avoid the risk that this Court will issue rulings that are inconsistent with the FCC's final determination, this action should be stayed pursuant to the doctrine of primary jurisdiction.

*Third*, pursuant to L.R. 40.4, Defendants intend to file a motion to have the instant case deemed related to the *Martin* case, given that the TCPA allegations are virtually identical, the class periods completely overlap, the *Martin* case was filed prior to this action, and resolution of the *Martin* matter would have a dispositive impact on this case.

## BACKGROUND

The TCPA was enacted in 1991 to curb abusive telemarketing practices arising out of the use of "autodialers" to generate millions of automated telephone calls. In this case, plaintiff, David Scardina, seeks compensation under the TCPA for telephone calls he allegedly received from defendant Midland Funding LLC ("Midland") in connection with an unpaid debt. The

TCPA section under which Scardina has sued prohibits persons from making non-emergency calls to cellular telephones using an "automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1). Thus, assuming Scardina can establish that he received calls from Midland, resolution of this action will likely require a determination of: (1) whether calls made to collect debts fall within the statute's purview; and (2) whether the alleged calls were placed using an "automatic telephone dialing system."

## ARGUMENT

I.     **An Affirmation Of The Eleventh Circuit Ruling In *Mims v. Arrow Financial Services*, Would Divest This Court Of Jurisdiction Over Plaintiff's Claim.**

In *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446 (7th Cir. 2005), the Seventh Circuit ruled that federal courts may hear lawsuits arising out of consumer claims for redress under the TCPA, such as Plaintiff's claim here. In doing so, the Seventh Circuit broke with six other federal courts of appeal that have held that jurisdiction over such consumer claims lies exclusively in state court and cannot be lodged in or removed to federal court. *Brill* was significant in that it created the kind of "split" among circuits that often forms the basis for the Supreme Court to exercise discretionary review.

Recently, in *Mims v. Arrow Financial Services, LLC*, the Eleventh Circuit affirmed a ruling that the federal district court lacked subject matter jurisdiction over *Mims*' TCPA claim. *See Mims*, No. 10-12077, 2010 WL 4840430 (11th Cir. Nov. 30, 2010), *cert. granted*, --- S. Ct. ----, 2011 WL 1212225 (June 27, 2011). The Supreme Court granted *certiorari* of this question on June 27, 2011, and if the Supreme Court decides to agree with the Eleventh Circuit, *Brill* will be over-ruled and this Court will be divested of jurisdiction over this claim. At a minimum, these proceedings, including all discovery, should be stayed until this Court determines whether it can even exercise jurisdiction here. Should the Court decide to deny this Motion

notwithstanding the uncertainty of its jurisdiction over Plaintiff's claims, Defendants respectfully request an additional 10 days from the entry of any such judgment to respond to Plaintiff's outstanding discovery requests.

## II.    The Case Should Be Stayed Pending A Resolution Of The FCC Rulemaking Proceedings Pursuant To The Primary Jurisdiction Doctrine.

Moreover, the issues before this Court are squarely before the FCC in an ongoing rulemaking proceeding.  In January 2010, the FCC announced in a Notice of Proposed Rulemaking (the "NPRM") (attached as **Exhibit A**) that it is considering revising its TCPA rules to require companies to obtain express written consent from the called party prior to placing automated, pre-recorded calls.  The proposed rule, if applied outside the telemarketing context, would severely curtail the ability of debt collectors to use automatic dialing technology because delinquent accountholders will generally not consent to being contacted by their creditors. Automatic dialing technology serves a critical regulatory compliance function within the debt collection industry.  Automatic dialing systems, operating in conjunction with sophisticated software, are used by debt collectors to ensure compliance with the numerous restrictions federal and state laws place on debt collection calls.  For example, the Fair Debt Collection Practices Act ("FDCPA") restricts the time, place, and manner in which debt collectors can call consumers. The FDCPA is a strict liability statute.  Without automatic dialing systems to ensure compliance with the FDCPA (and parallel or more restrictive state laws), debt collectors face the risk of administrative enforcement and civil liability, including class action exposure.

Because the TCPA was created to regulate telemarketing calls, the extent to which debt collection calls (as well as other non-telemarketing calls) fall within the statute has long been a hotly contested issue before the FCC.  The NPRM's proposed new rule gave rise to a groundswell of opposition not only from debt collectors, but also from members of Congress,

federal agencies, and businesses, all of whom recognized that such a stringent consent requirement would cripple the ability of debt collectors and other non-telemarketing businesses to use automatic dialing technology to call consumers. Over 1,000 formal comments were filed in response the NPRM. Many commentators – including eleven members of Congress – urged the FCC to either clarify that the TCPA applies only to telemarketers and not debt collectors, or to revise its interpretation of "automatic telephone dialing."

The primary jurisdiction doctrine allows courts to stay proceedings pending the resolution of an issue within the special competence of an administrative agency. *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991). It applies whenever enforcement of a claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

While no fixed formula exists for applying the doctrine of primary jurisdiction (*Ryan*, 935 F.3d at 131), the Supreme Court has cited several strong policy reasons for applying it. First, it promotes consistency and uniformity, particularly where the development of the law is dependent to some degree upon administrative policy. *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303-04 (1976). Moreover, "an administrative agency is uniquely qualified to resolve the complexities of certain areas which are outside the conventional experience of the courts." *Ryan*, 935 F.3d at 131 (citing *Ford Motor Co. v. NLRB*, 441 U.S. 488, 496 (1979)). Finally, "primary jurisdiction serves judicial economy because the dispute may be decided within the agency, thus obviating the need for the courts to intervene." *Id.* (citing *Christian v. New York State Dep't of Labor*, 414 U.S. 614, 622 (1974)).

The requirements for primary jurisdiction exist here. In order to adjudicate Scardina's claims, it will be necessary for this Court to determine (among other things) whether the TCPA's restrictions apply to debt collectors and, if so, whether the automatic dialing equipment used by debt collectors falls within the statutory definition of "automatic telephone dialing system." As noted above, these issues are currently before the FCC, and they have been placed by Congress within the FCC's jurisdiction pursuant to the Communications Act and the TCPA. *See* 47 U.S.C. § 151 (granting the FCC authority to "execute and enforce" the provisions of the Federal Communications Act, which includes the TCPA); 47 U.S.C. § 227 (charging the FCC with administration of the TCPA).

Additionally, the issues here require both technical and policymaking expertise. Technical expertise is required because automated telephone technology is complex and rapidly developing. The record before the FCC includes evidence describing the functionality, capability, and uses of such technology in the everyday operations of non-telemarketing businesses. *See, e.g.*, **Exhibit B**, at pp. 25-31, Declarations of Darrin R. Bird of Global Connect LLC, Jeffrey Dantzler of Comtronic Systems, LLC, Mark Laboyteaux of Interactive Intelligence Inc., Michael Leraris of LiveVox, Inc., John Tallarico of SoundBite Communications, and Michael J. Vesper of Vesper Technologies, LLC (describing functions and capabilities of various automatic dialing systems); *see also* **Exhibit C**, Aug. 24, 2010 letter from Senators Bennett and Hatch, and Representatives Bishop, Chaffetz and Matheson (describing certain technology for utilizing pre-recorded call segments). The FCC has considered issues relating to these complex technologies in the past, and is well-situated to do so again here. This fact weighs in favor of deferring to the FCC's rulemaking process. *See Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1039-40 (10th Cir. 1993) (staying lawsuit pending FCC ruling on interpretation of

relevant statutory language, where the issue involved "the appropriate characterization of a specific and relatively new service, in a rapidly changing industry," which had already been the subject of a number of orders and rulings by the FCC).

Likewise, regulatory and policymaking expertise is required here because, in issuing its rules, the FCC must take into account the overlapping regulatory schemes that restrict the activities of industries subject to the TCPA – for example, the relationship between debt collectors' ability to use automatic dialing equipment and their ability to comply with debt collection regulations such as the FDCPA and similar state statutes which impose harsh civil penalties and create substantial litigation exposure from misdialed numbers or incorrectly timed calls. *See, e.g.*, 15 U.S.C. § 1692.

Moreover, the use of automated telephone technology is rapidly expanding, and businesses that rely on this technology are concerned about the lack of regulatory certainty in this area. There is a strong need for uniformity and certainty that would be served by deferring to the FCC's rulemaking process, and would be undermined if this Court (or others) issued rulings on the very issues currently pending before the FCC. *See Kappelman v. Delta Air Lines*, 539 F.2d 165, 171 (D.C. Cir. 1976) (doctrine of primary jurisdiction was particularly applicable where there was an ongoing rulemaking proceeding that would allow the agency to make technical and policy determinations on an industry-wide basis).

Courts have consistently recognized that it is appropriate to stay a case under the doctrine of primary jurisdiction where – as here – the complaint raises questions that are the subject of pending administrative rulemaking proceedings. *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-15 (9th Cir. 2008) (Ninth Circuit affirmed the dismissal of a class action complaint that presented the question of whether a federal "anti-slamming" statute applied to Voice over

Internet Protocol ("VoIP") telephone services because the application of the statute to VoIP providers was the subject of a pending FCC rulemaking proceeding); *see also Southwestern Bell Tel. L.P. v. VarTec Telecom, Inc.*, No. 4:04CV1303(CEJ), 2005 WL 2033416, at \*4 (E.D. Mo. Aug. 23, 2005) ("The FCC's ongoing Rulemaking proceedings . . . make deferral particularly appropriate in this instance"); *Southern New England Tel. Co. v. Global NAPS, Inc.*, No. Civ.A. 304CV2075JCH, 2005 WL 2789323, at \*6 (D. Conn. Oct. 26, 2005) (staying claims under doctrine of primary jurisdiction where a recent FCC ruling and Notice of Proposed Rulemaking "demonstrate that these issues are very much in flux and currently being considered by the FCC"); *Kappelman*, 539 F.2d at 171 (doctrine of primary jurisdiction applies in cases where there is ongoing legislative or rulemaking activity).

For this additional reason, this Court should stay the current proceedings entirely until the FCC reaches a resolution on the pending issues.

## III. Defendants Intend To Move For This Case To Be Deemed Related To *Martin v. Midland Funding, LLC*.

On May 10, 2011, one day before Plaintiff filed the instant action, Nicholas Martin filed a putative class action on behalf of himself and a class of allegedly similarly-situated individuals alleging, among other things, that Midland Funding, LLC, a defendant in this action, violated the TCPA by calling Martin's cellular telephone using an "automatic telephone dialing system" or "prerecorded voice" without obtaining "prior express consent" to call his and other class members' cellular telephones. *See Martin* Compl. (attached as **Exhibit D**) ¶¶ 16-22. Such allegations are virtually identical to the allegations contained in Scardina's complaint. *See Scardina* Compl. ¶¶ 40-42 ("Defendant MCM [an affiliate of Midland Funding, LLC] did not have prior express consent to call Plaintiff's cellular telephone number XXX XXX-0519 using an automatic telephone dialing service and/or an artificial or prerecorded voice."). Moreover, the

class period in *Martin* is completely subsumed by the putative class period here.  *See Scardina* Compl. ¶ 49; *see also Martin* Compl. ¶¶ 20-22.  Accordingly, pursuant to L.R. 40.4, Defendants intend to move to have this case reassigned and deemed related to the *Martin* case, currently pending before the Honorable Judge Charles P. Kocoras.

## CONCLUSION

For all of the reasons set forth above, in the interest of judicial economy, this Court should stay all proceedings, including discovery, in order to avoid duplication of efforts and inconsistent rulings.  At a minimum, this Court should stay this action pending the Supreme Court's decision in *Mims v. Arrow Financial Services, LLC*, which will determine if this Court has jurisdiction over this matter in the first instance.  Finally, should the Court choose to deny this Motion, Defendants respectfully request an additional ten days from the entry of any such order to respond to Plaintiff's pending discovery responses, currently due on July 14, 2011.

Dated:  July 12, 2011                                  Respectfully submitted,

**MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, AND ENCORE CAPITAL GROUP, INC.**

By:   s/ Renee L. Zipprich
Renee Zipprich (rzipprich@dykema.com)
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois  60606
Phone: 312-876-1700
Fax:    312-627-2302

Theodore W. Seitz (tseitz@dykema.com*)*
DYKEMA GOSSETT PLLC
Capitol View
201 Townsend Street, Suite 900
Lansing, Michigan  48933
Phone: (517) 374-9100
Fax:    (517) 374-9191

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **July 12, 2011**, I electronically filed the foregoing **Memorandum in Support of Defendants' Motion to Stay** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Curtis C. Warner
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Suite 560
Chicago, IL  60601
(312) 238-9820 – tel.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Edelman Combs Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603
312 739-4200

s/ J. Richard Madamba

CHICAGO\3301687.1
ID\RLZ - 097356/0103

10