# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVE SCARDINA, individually and on behalf of a class | Case No.    11-cv-03149 |
| Plaintiff, | |
| vs. | |
| MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, ENCORE CAPITAL GROUP, INC. | |
| Defendant. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Midland Credit Management, Inc. ("MCM"), Midland Funding LLC ("Midland"), and Encore Capital Group, Inc. ("Encore") (collectively "Defendants"), for their response to plaintiff's first requests for admission, interrogatories and requests for production of document, state as follows:

**GENERAL OBJECTIONS**

Defendants assert these General Objections to each and every one of the Scardina's interrogatories and production requests, definitions, and instructions individually and as to these requests as a whole. These General Objections are incorporated by reference in the specific responses set forth below and are neither waived nor limited by the specific responses.

1. Defendants object to each Interrogatory and production request to the extent they seek information beyond the possession, custody, or control of Defendants based upon a reasonable search of their files.

2.      Defendants object to Scardina's Interrogatories and Production Requests to the extent that they seek legal conclusions, and/or would require Defendants to reach a legal conclusion in order to prepare a response.

3.       Defendants object to each Interrogatory and Production Request, definition and instruction to the extent it is inconsistent with the Federal Rules of Civil Procedure or seeks to impose burdens beyond those allowed by the Federal Rules of Civil Procedure and the local rules and orders of the Court.

4.      Defendants reserve all evidentiary objections under the Federal Rules of Evidence.  By responding to these Interrogatories and Production Requests, Defendants do not admit the competence, admissibility or relevance of any fact or information referenced, or admit the truth or accuracy of any characterization contained in these Interrogatories.

5.      The repetition of any General Objection in response to a specific Interrogatory or Production Request does not waive the objection for any other Interrogatory or Production Request to which it is also applicable.

6.      The responses set forth herein are based on information presently known to Defendants.  In providing these responses, Defendants reserve the right to amend, modify, or supplement its responses and objections.

7.      Defendants object to each of the Interrogatories and Production Request to the extent Scardina is seeking the production or disclosure of information covered by the attorney-client privilege, the attorney work product doctrine, and any other privilege or protection available under applicable law.

Subject to and without waiving these General Objections, Defendants respond as follows:

## REQUESTS FOR ADMISSION

1.      Defendant Midland Credit Management, Inc., called (312) 770-0519.

**ANSWER:     Admitted that someone on behalf of MCM called (312) 770-0519.**

2.      Defendant Midland Credit Management, Inc. caused the telephone number (312) 770-0519 to be called.

**ANSWER:     Admitted that someone on behalf of MCM called (312) 770-0519.**

3.      Defendant Midland Credit Management, Inc. intended the telephone number (312) 770-0519 to be called.

**ANSWER:     Admitted that MCM intended to call Plaintiff on the telephone number that Plaintiff, upon information and belief, provided to the creditor of the underlying account at issue, in connection with collecting on the debt.**

4.      On at least one occasion Defendant Midland Credit Management caused a prerecorded message to be left on the voice mail associated with the telephone number (312) 770-0519.

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "prerecorded message" in that it is vague, ambiguous, and an improper legal conclusion.  Subject to the foregoing and General Objections, to the extent that this term is understood, it is denied.**

5.      Calls to (312) 770-0519 that where either placed or were caused to be placed by Defendant Midland Credit Management, Inc., were placed on behalf of Midland Funding, LLC.

**ANSWER:     Admitted that MCM intended to call Plaintiff on the telephone number that Plaintiff, upon information and belief, provided to the creditor of the underlying account at issue, in connection with collecting on the debt, currently owed to Midland Funding, LLC.**

6.      Calls to (312) 770-0519 that where either placed or were caused to be placed by Defendant Midland Credit Management, Inc., were placed to further a business objective of Encore Capital Group, Inc.

**ANSWER:    Denied.**

7.      On or after May 11, 2007, Defendant Midland Credit Management, Inc. has used at least one piece of automated equipment that is capable of storing telephone numbers to be called by that automated equipment.

**ANSWER:    In addition to the General Objections, Defendants object to the**

**undefined term "automated equipment," and further object to the use of such term**

**as an improper legal conclusion, and therefore deny the allegations contained in**

**Paragraph 7.**

8.      On or after May 11, 2007, Defendant Midland Credit Management, Inc. has used at least one piece of automated equipment that has a random number generator capable of producing numbers to be called by that automated equipment.

**ANSWER:    In addition to the General Objections, Defendants object to the**

**undefined terms "automated equipment" and "random number generator" as**

**vague and ambiguous, and further object to the use of such terms as improper legal**

**conclusions, and therefore deny the allegations contained in Paragraph 8.**

9.      On or after May 11, 2007, Defendant Midland Credit Management, Inc. has used at least one piece of automated equipment that has a sequential number generator capable of producing numbers to be called by that automated equipment.

**ANSWER:    In addition to the General Objections, Defendants object to the**

**undefined terms "automated equipment" and "sequential number generator" as**

**vague and ambiguous, and further object to the use of such terms as improper legal**

**conclusions, and therefore deny the allegations contained in Paragraph 9.**

10.     On or after May 11, 2007, Defendant Midland Credit Management, Inc. has used at least one piece of automated equipment that can convey a prerecorded message to the number called without the use of a live operator.

**ANSWER:     In addition to the General Objections, Defendants object to the**

**undefined terms "automated equipment," "prerecorded message," and "live**

**operator" as vague and ambiguous, and further object to the use of such terms as**

**improper legal conclusions, and therefore deny the allegations contained in**

**Paragraph 10.**

11.     On or after May 11, 2007, Defendant Midland Credit Management, Inc. has used at least one piece of automated equipment that can convey a synthesized message to the number called without the use of a live operator.

**ANSWER:     In addition to the General Objections, Defendants object to the**

**undefined terms "automated equipment" and "synthesized message" as vague and**

**ambiguous, and further object to the use of such terms as improper legal**

**conclusions, and therefore deny the allegations contained in Paragraph 11.**

12.     On or after May 11, 2007, Defendant Midland Credit Management, Inc. has used at least one piece of automated equipment that is a "predictive dialer" as defined by the Federal Communication Commission.

**ANSWER:     In addition to the General Objections, Defendants object to the**

**undefined terms "automated equipment" and "predictive dialer" as vague and**

**ambiguous, and further object to the use of such terms as improper legal**

**conclusions, and therefore deny the allegations contained in Paragraph 12.**

13.     Defendant Midland Credit Management, Inc. intended the telephone number (312) 770-0519 to be called by a predictive dialer.

**ANSWER:     In addition to the General Objections, Defendants object to the**

**undefined term "predictive dialer" as vague and ambiguous, and further object to**

**the use of such term as an improper legal conclusion, and therefore deny the**

**allegations contained in Paragraph 13.**

14.     Defendants permitted the use of the automated equipment that called the telephone number (312) 770-0519.

**ANSWER:     In addition to the General Objections, Defendants object to the**

**undefined term "automated equipment" as vague and ambiguous, and further**

**object to the use of such term as an improper legal conclusion, and therefore deny**

**the allegations contained in Paragraph 14.**

15.     Defendants authorized the use of the automated equipment that called the telephone number (312) 770-0519.

**ANSWER:     In addition to the General Objections, Defendants object to the**

**undefined term "automated equipment" as vague and ambiguous, and further**

**object to the use of such term as an improper legal conclusion, and therefore deny**

**the allegations contained in Paragraph 15.**

16.     Defendant Midland Credit Management, Inc. placed or caused to be placed a phone call to the telephone number (312) 770-0519 on or approximately:

      a.     Apri1 27, 2011 at 8:19 a.m.

      b.     April 27, 2011 at 5:03 p.m.

      c.     April 28, 2011 at 8:11 a.m.

      d.     April 28, 2011 at 9:45 a.m.

      e.     April 29, 2011 at 10:13 a.m.

      f.     April 30, 2011 at 9:55 a.m.

      g.     May 1, 2011 at 10:09 a.m.

      h.     May 2, 2011 at 8:07 a.m.

i.     May 3, 2011 at 8:05 a.m.

j.     May 3, 2011 at 9:12 a.m.

k.     May 3, 2011 at 11:36 a.m.

l.     May 3, 2011 at 12:43 p.m.

m.     May 4, 2011 at 8:07 a.m.

n.     May 5, 2011 at 8:12 a.m.

o.     May 5, 2011 at 10:44 a.m.

p.     May 5, 2011 at 2:23 p.m.

q.     May 7, 2011 at 9:35 a.m.;

r.     May 7, 2011 at 10:40 a.m.

s.     May 7, 2011 at 12:01 p.m.

t.     May 8, 2011 at 10:39 a.m.

u.     May 8, 2011 at 10:55 a.m.

v.     May 8, 2011 at 11:30 a.m.

w.     May 8, 2011 at 10:14 p.m.

x.     May 9, 2011 at 9:30 a.m.

y.     May 9, 2011 at 9:47 a.m.

z.     May 9, 2011 at 9:55 a.m.

aa.     May 10, 2011 at 8:03 a.m.

bb.     May 10, 2011 at 8:36 a.m.

cc.     May 10, 2011 at 8:52 a.m.

dd.     May 10, 2011 at 9:06 a.m.

**ANSWER:    Admitted that MCM caused Plaintiff's number to be called on at least one occasion. Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 16, and therefore deny same.**

17.     Defendant Midland Credit Management, Inc. called or caused to be called the telephone number (312) 770-0519 beginning on April 27, 2011 using one or more "predictive dialers."

**ANSWER:     In addition to the General Objections, Defendants object to the undefined term "predictive dialers" as vague and ambiguous, and further object to the use of such term as an improper legal conclusion, and therefore deny the allegations contained in Paragraph 17.**

18.     Prior to April 27, 2011, Midland Credit Management, Inc. could determine whether a telephone number is a cellular telephone number.

**ANSWER:     In addition to the General Objections, Defendants object to this request on the grounds that the phrase "could determine whether a number is a cellular telephone number" is vague and ambiguous, and therefore deny the allegations contained in Paragraph 18.**

19.     Prior to April 27, 2011, Midland Credit Management, Inc. could have hired an outside vendor to determine whether a telephone number is a cellular telephone number.

**ANSWER:     Paragraph 19 contains an improper hypothetical to which no response is required. If a response is deemed required, Defendants deny same.**

20.     Prior to May 11, 2007, Midland Credit Management, Inc. could determine whether a telephone number is a cellular telephone number.

**ANSWER:     Denied.**

21.     Prior to May 11, 2007, Midland Credit Management, Inc. could have hired an outside vendor to determine whether a telephone number is a cellular telephone number.

**ANSWER:     Paragraph 21 contains an improper hypothetical to which no response is required. If a response is deemed required, Defendants deny same.**

22.     Defendant Midland Credit Management, Inc. maintains a computerized list of numbers to call using predictive dialers.

**ANSWER:     In addition to the General Objections, Defendants object to the undefined terms "predictive dialers" and "computerized list" as vague and ambiguous, and further object to the use of such terms as improper legal conclusions, and therefore deny the allegations contained in Paragraph 22.**

23.     It is Defendant Midland Credit Management, Inc.'s policy to use predictive dialers to make telephone calls.

**ANSWER:     Defendants object to the undefined term "predictive dialers," and further object to the use of such term as an improper legal conclusion, and therefore deny the allegations contained in Paragraph 23.**

24.     It is Defendant Midland Credit Management, Inc.'s policy to use predictive dialers to attempt to collect debts.

**ANSWER:     Defendants object to the undefined term "predictive dialers," and further object to the use of such term as an improper legal conclusion, and therefore deny the allegations contained in Paragraph 24.**

25.     At the time that Defendant Midland Credit Management, Inc. called or caused to be called the telephone number (312) 770-0519, no prior express consent existed to call the telephone number (312) 770-0519.

**ANSWER:     Defendants obtained Plaintiff's telephone number listed in Paragraph 25 from the creditor from whom Plaintiff obtained the underlying account at issue. Upon information and belief, Plaintiff provided the telephone number contained in Request No. 25 to the creditor of that account and therefore expressly consented to being called on that number by the creditor and any subsequent owner of the debt. Therefore, Defendants deny Request No. 25.**

26.     Plaintiff did not furnish the telephone number (312) 770-0519 to any of defendants.

**ANSWER:     Defendants obtained Plaintiff's telephone number listed in Paragraph 26 from the creditor from whom Plaintiff obtained the underlying account at issue. Upon information and belief, Plaintiff provided the telephone number contained in Request No. 26 to the creditor of that account and therefore expressly consented to being called on that number by the creditor and any subsequent owner of the debt. Therefore, Defendants deny Request No. 26.**

27.     Plaintiff did not furnish the telephone number (312) 770-0519 to the original creditor.

**ANSWER:     Defendants obtained Plaintiff's telephone number listed in Paragraph 27 from the creditor from whom Plaintiff obtained the underlying account at issue. Upon information and belief, Plaintiff provided the telephone number contained in Request No. 27 to the creditor of that account and therefore expressly consented to being called on that number by the creditor and any subsequent owner of the debt. Therefore, Defendants deny Request No. 27.**

28.     Prior to calling (312) 770-0519 for the first time, no Defendant had prior express consent to call.

**ANSWER:     Defendants obtained Plaintiff's telephone number listed in Paragraph 28 from the creditor from whom Plaintiff obtained the underlying account at issue. Upon information and belief, Plaintiff provided the telephone number contained in Request No. 28 to the creditor of that account and therefore expressly consented to being called on that number by the creditor and any subsequent owner of the debt. Therefore, Defendants deny Request No. 28.**

29.    In a letter dated November 1, 2010, Plaintiff informed United Recovery Systems, LP, "Please stop calling my telephone number (312) 770-0519 for collecting the HSBC Bank account you tell me I owe: Account No.: XXXX)0000000C7795".

**ANSWER:    Defendants are without sufficient information to admit or deny this allegation, and therefore deny same.**

30.    Prior to April 27, 2011, the telephone number (312) 770-0519 was associated with a cellular telephone number.

**ANSWER:    Defendants are without sufficient information to admit or deny this allegation, and therefore deny same.**

31.    For all calls that Defendant Midland Credit Management, Inc., placed or caused to be placed to the telephone number (312) 770-0519, the outgoing caller id of the caller is manipulated to display the number "000".

**ANSWER:    Denied.**

32.    There are more than 40 (a) persons with a cellular telephone number corresponding to an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011, (c) received an automated call from Midland Credit Management, Inc., (d) where defendants' records do not show that the person provided the number to defendants or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER:    In addition to the General Objections, Defendants object to the use of the undefined term "automated call" as vague and ambiguous, and therefore deny same.  Defendants further object on the grounds that the request is premature, as no class has been certified.  Defendants further object on the grounds that the request is overly broad and unduly burdensome.  In order to respond to this request, MCM would have to manually and individually review thousands of accounts over a four year period, including a review of account notes, any available recordings (to the**

11

**extent they exist), as well as all underlying documentation from the creditor of the underlying account.**

33.     There are more than 100 (a) persons with a cellular telephone number corresponding to an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011, (c) received an automated call from Midland Credit Management, Inc., (d) where defendants' records do not show that the person provided the number to defendants or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "automated call" as vague and ambiguous, and therefore deny same.  Defendants further object on the grounds that the request is premature, as no class has been certified.  Defendants further object on the grounds that the request is overly broad and unduly burdensome.  In order to respond to this request, MCM would have to manually and individually review thousands of accounts over a four year period, including a review of account notes, any available recordings (to the extent they exist), as well as all underlying documentation from the creditor of the underlying account.**

34.     There are more than 500 (a) persons with a cellular telephone number corresponding to an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011, (c) received an automated call from Midland Credit Management, Inc., (d) where defendants' records do not show that the person provided the number to defendants or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "automated call" as vague and ambiguous, and therefore deny same.  Defendants further object on the grounds that the request is premature, as no**

**class has been certified. Defendants further object on the grounds that the request is overly broad and unduly burdensome. In order to respond to this request, MCM would have to manually and individually review thousands of accounts over a four year period, including a review of account notes, any available recordings (to the extent they exist), as well as all underlying documentation from the creditor of the underlying account.**

35.     There are more than 1000 (a) persons with a cellular telephone number corresponding to an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011, (c) received an automated call from Midland Credit Management, Inc., (d) where defendants' records do not show that the person provided the number to defendants or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "automated call" as vague and ambiguous, and therefore deny same. Defendants further object on the grounds that the request is premature, as no class has been certified. Defendants further object on the grounds that the request is overly broad and unduly burdensome. In order to respond to this request, MCM would have to manually and individually review thousands of accounts over a four year period, including a review of account notes, any available recordings (to the extent they exist), as well as all underlying documentation from the creditor of the underlying account.**

36.     Encore's webpage states, "If you are one of our consumers, you probably know us as Midland Credit Management. Midland Credit Management is an Encore Capital Group subsidiary [1" * * * "If you have received a letter or phone call from us, seen our name on your credit report, or received a letter or phone call from a law firm or collection agency acting on our behalf, it means that your obligation (credit card, auto loan, consumer loan, home or cell phone bill, student loan) to a lender is now your obligation to Midland, as a result of our agreement

with that lender. Please give us a call or log into our site to create a repayment arrangement or discuss the status of your account." http://www.encorecapital.com/consumers

> **ANSWER:** **Defendants state that Encore's website speaks for itself and deny all remaining allegations contained in Paragraph 36.**

37. Encore describes itself as "a leading accounts receivable management firm" (Encore Capital Group Inc., Exhibit 99.1, filed with the SEC on March 15, 2006) and a "purchaser and manager of charged-off consumer receivables portfolios". (Encore Capital Group Inc., Form 424B3, filed March 1, 2011, prospectus summary)

> **ANSWER:** **Defendants state that Encore's Exhibit 99.1, filed with the SEC on March 15, 2006, and Form 424B3, filed March 1, 2011, prospectus summary speak for themselves and deny all remaining allegations contained in Paragraph 37.**

38. On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios." (Form 8-K filed by Encore with the SEC on March 10, 2005.)

> **ANSWER:** **Defendants state that Encore's Form 8-K filed by Encore with the SEC on March 10, 2005, speaks for itself and deny all remaining allegations contained in Paragraph 38.**

39. Encore acquires portfolios for an average of about 3.3 cents on the dollar. "From inception through December 31, 2010, we have invested approximately $1.8 billion to acquire 33.0 million consumer accounts with a face value of approximately $54.7 billion." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p.1.)

> **ANSWER:** **Defendants state that Encore's Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p.1, speaks for itself and deny all remaining allegations contained in Paragraph 39.**

40. Encore states that it is responsible for developing collection strategies. Its Form 10-K for the year ending December 31, 2010 states "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our

ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account." (Original page 4)

> **ANSWER:** **Defendants state that Encore's Form 10-K for the year ending**
>
> **December 31, 2010 speaks for itself and deny all remaining allegations contained in**
>
> **Paragraph 40.**

41.     Among these strategies are outbound telephone calls. "During 2010, we called approximately 8.6 million unique consumers, of which 1.8 million, or 21%, made contact with us." (Encore Capital Group, Inc. report on SEC Form 10-K for the year ending December 31, 2010, original page 4)

> **ANSWER:** **Defendants state that Encore's Encore Capital Group, Inc. report on**
>
> **SEC Form 10-K for the year ending December 31, 2010, original page 4 speaks for**
>
> **itself and deny all remaining allegations contained in Paragraph 41.**

42.     Similarly, in its Prospectus filed with the SEC on March 1, 2011, Encore Capital Group, Inc., stated ("Prospectus Summary"):

> **We are a systems-driven purchaser and manager of charged-off consumer receivable portfolios . . . We acquire receivable portfolios at deep discounts from their face values using our proprietary valuation process that is based upon an analysis of the individual consumer attributes of the underlying accounts. Based upon our ongoing analysis of these accounts, we employ a dynamic mix of collection strategies to maximize our return on investment... . Acquisitions of receivable portfolios are financed from operating cash flows and borrowings from third parties....**
>
> **We have been in the collection business for 56 years and started purchasing portfolios for our own account approximately 19 years ago....**
>
> **We have established certain relationships with credit card issuers, other lenders and resellers that allow us to purchase portfolios directly through negotiated transactions, and we participate in the auction-style purchase processes that typify our industry. In addition, we enter into "forward flow" arrangements in which we agree to buy receivables that meet agreed upon parameters over the course of the contract term.**

**We evaluate each portfolio for purchase using the proprietary valuation and underwriting processes developed by our in-house team of statisticians. Unlike many of our competitors, which we believe primarily base their purchase decisions on numerous aggregated portfolio-level factors, including the originator, the type of receivables to be purchased, or the number of collection agencies the accounts have been placed with previously, we base our purchase decisions primarily on our analysis of the specific accounts included in a portfolio. Based upon this analysis, we determine a value for each account, which we aggregate to produce a valuation of the entire portfolio. We believe this capability allows us to perform more accurate valuations of receivable portfolios. We have successfully applied this methodology to receivables across multiple asset classes.**

**After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection. As with our purchase decisions, our collection strategies are based on account level criteria. Our collection strategies include: ...**

**\*     outbound calling, driven by proprietary, predictive software, by our own collection workforce located at our three domestic call centers and our international call center in India; ...**

**ANSWER:     Defendants state that Encore's Prospectus Summary speaks for itself and deny all remaining allegations contained in Paragraph 42.**

## INTERROGATORIES

43.     Other than the attorneys and employees of Dykema Gossett PLLC, identify each person involved in answering these Interrogatories and Requests for Admission.

.

**ANSWER:     Subject to the General Objections, Members of MCM's inhouse legal department were involved in answering the Discovery Requests.  These individuals can be contacted through undersigned counsel.**

16

44.     If you contend that an entity other than Midland Credit Management, Inc., placed any telephone call to (312) 770-0519, please identify the entity's name and business address, and identify the date and time those calls were placed.

**ANSWER:     In addition to the General Objections, Defendants object to Interrogatory No. 44 on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous, in that it is asking Defendants to identify any entity in existence that may have called Plaintiff on his cellular phone number.**

45.     Identify each person who authorized Midland Credit Management, Inc. to use or caused to be used any "predictive dialer" to call the telephone number (312) 770-0519.

**ANSWER:     In addition to the General Objections, Defendants object to the undefined term "predictive dialers," and further object to the use of such term as an improper legal conclusion, and therefore deny the allegations contained in Paragraph 45.**

46.     If any Defendant contends that Plaintiff furnished the telephone number (312) 770-0519 to Defendants or the original creditor or any entity acting on behalf of the original creditor, then identify the person(s) involved in obtaining the number, the date(s) on which the number was obtained, the person(s) who provided the number, and each person involved in maintaining a log or other record of Plaintiff's contact information.

**ANSWER:     In addition to the General Objections, Defendants object to Interrogatory No. 46 on the grounds that it is overly broad and unduly burdensome. Subject to foregoing and General Objections, Defendants identify HSBC Bank Nevada, N.A.**

47.     If any Defendant contends that Plaintiff authorized the automated placement of calls to the telephone number (312) 770-0519, then identify the person(s) involved in obtaining that consent, the date(s) on which that consent was obtained, the person(s) who provided that consent, and each person involved in maintaining a log or other record of Plaintiff's consent.

**ANSWER:     In addition to the General Objections, Defendants object to Interrogatory No. 47 on the grounds that it is overly broad and unduly burdensome. Defendants further object to the undefined phrase "automated placement of calls" as vague and ambiguous.  Subject to foregoing and General Objections, Defendants identify HSBC Bank Nevada, N.A.**

48.     State the number of and identify by stating their name and last known address, (a) all persons with a cellular telephone number corresponding to an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011, (c) received an automated call from Midland Credit Management, Inc., (d) where defendants' records do not show that the person provided the number to defendants or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER:     In addition to the General Objections, Defendants object to Interrogatory No. 48 as premature given that no class has been certified in this matter.  Defendants further object to this request on the grounds that it is overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period.  Finally, Defendants object to the use of the undefined phrase "automated placement of calls" as vague and ambiguous.**

49.     For each cellular telephone number with a corresponding Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, .773, 779, 815, 847, or 872) that Midland Credit Management, Inc. dialed or caused to be dialed with a predictive dialer with a prerecorded message called from May 11, 2007 to May 31, 2011, state the number of (a) cellular telephone numbers that do not appear in any application for credit related to the debt Midland Credit Management, Inc.'s calls were in regard to; (b) cellular telephone numbers that were not provided directly from the debtor to the original creditor or defendants; (c) cellular telephone numbers that the original creditor, any one of the defendants, or any prior entity collecting the

debt, obtained from skip-tracing or a caller-id of an inbound call; (d) persons who in writing requested that their telephone number not be called prior to Midland placing a telephone call to that number; (e) cellular telephone number where any defendant's records do not show that the person provided the number to any defendant or the original creditor.

**ANSWER:** **In addition to the General Objections, Defendants object to Interrogatory No. 49 as premature given that no class has been certified in this matter. Defendants further object to this request on the grounds that it is overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period. Finally, Defendants object to the use of the undefined terms "predictive dialer" and "prerecorded messages" as improper legal conclusions. To the extent that the term "prerecorded message" is understood, MCM states that it did not leave prerecorded messages on the telephone answering devices of debtors.**

50. For each cellular telephone number with a corresponding Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) that Midland Credit Management, Inc. dialed or caused to be dialed with a predictive dialer with a prerecorded message called from May 11, 2007 to May 31, 2011, where any of defendant's records do not show that the person provided the number to any defendant or the original creditor, please state the name and address of that person and the number of calls placed to that person.

**ANSWER:** **In addition to the General Objections, Defendants object to Interrogatory No. 50 as premature given that no class has been certified in this matter. Defendants further object to this request on the grounds that it is overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period. Finally, Defendants object to the use of the undefined terms "predictive dialer" and "prerecorded messages" as improper legal conclusions. To the extent that the term**

**"prerecorded message" is understood, MCM states that it did not leave prerecorded**

**messages on the telephone answering devices of debtors.**

51.     For each cellular telephone number with a corresponding Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) that Midland Credit Management, Inc. dialed or caused to be dialed with a predictive dialer with a prerecorded message called from May 11, 2007 to May 31, 2011, identify how each Defendant obtained the cellular telephone number called.

**ANSWER:     In addition to the General Objections, Defendants object to**

**Interrogatory No. 51 as premature given that no class has been certified in this**

**matter.  Defendants further object to this request on the grounds that it is overly**

**broad and unduly burdensome, in that it would require MCM to manually and**

**individually review every MCM account in Illinois over a four year period.  Finally,**

**Defendants object to the use of the undefined terms "predictive dialer" and**

**"prerecorded messages" as improper legal conclusions.  To the extent that the term**

**"prerecorded message" is understood, MCM states that it did not leave prerecorded**

**messages on the telephone answering devices of debtors.**

52.     For each cellular telephone number with an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) that Midland Credit Management, Inc. dialed or caused to be dialed with a predictive dialer with a prerecorded message called from May 11, 2007 to May 31, 2011, identify all records each Defendant keeps of each debtor's telephone number supplied to Midland Funding, LLC., when Midland Funding, LLC., purchased the debt.

**ANSWER:     In addition to the General Objections, Defendants object to**

**Interrogatory No. 49 as premature given that no class has been certified in this**

**matter.  Defendants further object to this request on the grounds that it is overly**

**broad and unduly burdensome, in that it would require MCM to manually and**

**individually review every MCM account in Illinois over a four year period.  Finally,**

**Defendants object to the use of the undefined terms "predictive dialer" and**

**"prerecorded messages" as improper legal conclusions. To the extent that the term**

**"prerecorded message" is understood, MCM states that it did not leave prerecorded**

**messages on the telephone answering devices of debtors.**

53. Identify the person(s) who participated in each Defendant's decision to use predictive dialers to collect alleged debts.

**ANSWER:    In addition to the General Objections, Defendants object to**

**Interrogatory No. 53 on the grounds that the undefined term "predictive dialers" is**

**an improper legal conclusion. Defendants further object to this request as it seeks**

**information that is irrelevant and unlikely to lead to the discovery of admissible**

**evidence.**

54. Identify the company that provided any predictive dialers used by any Defendant.

**ANSWER:    In addition to the General Objections, Defendants object to**

**Interrogatory No. 54 on the grounds that the undefined term "predictive dialers" is**

**an improper legal conclusion. Defendants further object to this request as it seeks**

**information that is irrelevant and unlikely to lead to the discovery of admissible**

**evidence.**

55. For a time period from May 11, 2007 to May 31, 2011, state the full text of all prerecorded messages Midland Credit Management, Inc. left or caused to be left on the telephone answering devices of debtors.

**ANSWER:    In addition to the General Objections, Defendants object to the use of**

**the undefined term "prerecorded messages" as vague, ambiguous, and an improper**

**legal conclusion. To the extent that the term "prerecorded message" is understood,**

**MCM states that it did not leave prerecorded messages on the telephone answering**

**devices of debtors.**

56.     Identify each person who has been involved in formulating or establishing any of Defendant's policies or procedures concerning the use or causing to be used predictive dialers for the purpose of attempting to collect a debt.

**ANSWER:     In addition to the General Objections, Defendants object to the use of**

**the undefined term "predictive dialer" as an improper legal conclusion.**

57.     Describe in detail how each Defendant determined what persons and/or phone numbers were to be called using a predictive dialer.

**ANSWER:     In addition to the General Objections, Defendants object to the use of**

**the undefined term "predictive dialer" as an improper legal conclusion.  Defendants**

**further object to this Interrogatory on the grounds that it request information that**

**is confidential and proprietary.  Finally, Defendants object to this Interrogatory on**

**the grounds that it seeks information that is irrelevant and unlikely to lead to the**

**discovery of admissible evidence.**

58.     Describe all means each Defendant has used to determine if a number is a cellular number and when that policy and practice was in place.

**ANSWER:     In addition to the General Objections, Defendants object to**

**Interrogatory No. 58 as overly broad and unduly burdensome.  Defendants further**

**object to this interrogatory as it seeks information that is irrelevant and not likely to**

**lead to the discovery of admissible evidence.**

59.     State whether Defendants employ- any skip tracing services in connection with collecting debts. If so, identify what skip tracing service Defendants use.

**ANSWER:     In addition to the General Objections, Defendants object to**

**Interrogatory No. 59 as overly broad and unduly burdensome.  Defendants further**

**object to this interrogatory as it seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence.**

60.    State whether any Defendant employs skip-tracing services on every account.

**ANSWER:    In addition to the General Objections, Defendants object to Interrogatory No. 60 as overly broad and unduly burdensome.  Defendants further object to this interrogatory as it seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence.**

61.    Describe in detail all procedures Defendants use to remove cell phone numbers from the list of telephone numbers they call using a predictive dialer.

**ANSWER:    In addition to the General Objections, Defendants object to the use of the undefined term "predictive dialer" as an improper legal conclusion.**

62.    State in detail each Defendant's factual basis to support any affirmative defenses that Defendant has raised.

**ANSWER:    In addition to the General Objections, Defendants object to Interrogatory No. 62 on the grounds that it is premature, given that discovery is on-going, and this information may be the subject of third-party discovery.  Subject to the foregoing and General Objections, Defendants obtained Plaintiff's telephone number, from the creditor from whom Plaintiff obtained the underlying account at issue.  Upon information and belief, Plaintiff provided the telephone number that is the subject of this dispute to the creditor of that account and therefore expressly consented to being called on that number by the creditor and any subsequent owner of the debt.**

63.     Identify which Defendant was responsible for the paying for the predictive dialers used to call cellular telephone numbers with Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872), on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011.

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "predictive dialer" as an improper legal conclusion.  Defendants further object to this Interrogatory on the grounds that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence.**

64.     With respect to each expert whom each Defendant will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**ANSWER:     In addition to the General Objections, Defendants object to Interrogatory No. 64 on the grounds that it is premature.**

## DOCUMENTS REQUESTED

1.     For a time period from May 11, 2007 to May 31, 2011, all logs or other documents indicating a putative debtor's consent to receive automated calls to cellular telephone numbers.

**ANSWER:     In addition to the General Objections, Defendants object to Request No. 1 on the grounds that it is premature given that no class has been certified in this matter.  Defendants further object to this request on the grounds that it is overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period.**

2.      For a time period from May 11, 2007 to May 31, 2011, all of Defendants' insurance policies.

**ANSWER:      In addition to the General Objections, Defendants object to this request as overly broad and unduly burdensome.  Defendants further object to this request in that it seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence.**

3.      All correspondence to or from Defendants and any insurance company, broker, or agent concerning or relating to a reservation of rights or denial of coverage for the claims asserted in this lawsuit against Defendants.

**ANSWER:      In addition to the General Objections, Defendants object to this request as overly broad and unduly burdensome.  Defendants further object to this request in that it seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence.**

4.      If any Defendant contends that Plaintiff consented to receive the automated placement of calls to the telephone number (312) 770-0519, then all documents evidencing that consent.

**ANSWER:      Subject to the General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, at a mutually agreeable time and place.**

5.      If any Defendant contends that Plaintiff furnished the telephone number (312) 770-0519 to Defendants or the original creditor, then all documents evidencing that fact.

**ANSWER:      Subject to the General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, at a mutually agreeable time and place.**

6.      For a time period from May 11, 2007 to May 31, 2011, Defendants' records for the automated dialer(s) used to contact Plaintiff and the putative class members.

**ANSWER:    In addition to the General Objections, Defendants object to the use of the undefined term "automated dialer(s)" and undefined phrase "records for the automatic dialer" as vague and ambiguous. Defendants further object to Request No. 6 on the grounds that it is premature given that no class has been certified in this matter.  Defendants also object to this request on the grounds that it is overly broad and unduly burdensome in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period.**

7.      All documents that contain, refer to, set forth, or explain Defendants' policy or practice of obtaining consent from persons prior to using automated dialers to contact their cellular telephones.

**ANSWER:    In addition to the General Objections, Defendants object to the use of the undefined term "automated dialer(s)" as vague and ambiguous.  Subject to the foregoing and General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, and to the extent this request is understood, at a mutually agreeable time and place.**

8.      All documents that contain, refer to, set forth, or explain each Defendant's policy or practice of contacting debtors on their cellular telephones.

**ANSWER:    Subject to the General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, at a mutually agreeable time and place.**

9.     All documents that contain, refer to, set forth, or explain each Defendant's policies or practices regarding the use of predictive dialers.

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "predictive dialers" as vague and ambiguous and an improper legal conclusion.**

10.     All documents that contain, refer to, set forth or explain each Defendant's policies or practices about maintaining a log or record showing a person's consent to receive automated calls to their cellular telephones.

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "automated calls" as vague and ambiguous and an improper legal conclusion.  Subject to the foregoing and General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, and to the extent this request is understood, at a mutually agreeable time and place.**

11.     All documents that identify each person with a cellular telephone number corresponding to an Illinois area code (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) (b) who, on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011, (c) received an automated call from Midland Credit Management, Inc., (d) where defendants' records do not show that the person provided the number to defendants or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

**ANSWER:     In addition to the General Objections, Defendants further object to Request No. 11 on the grounds that it is premature given that no class has been certified in this matter.  Defendants further object to this request as overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period.  Finally,**

27

**Defendants object to the use of the undefined term "automated call" as vague, ambiguous, and an improper legal conclusion.**

12.    All documents which indicate that the persons identified in Request 11 consented to have their cell phone called using a predictive dialer.

**ANSWER:    In addition to the General Objections, Defendants further object to Request No. 12 on the grounds that it is premature given that no class has been certified in this matter.  Defendants further object to this request as overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period.  Finally, Defendants object to the use of the undefined term "predictive dialer" as vague, ambiguous, and an improper legal conclusion.**

13.    All documents that each Defendant reviewed or relied upon in answering the Interrogatories or Request to Admit Plaintiff directed to Defendants.

**ANSWER:    Subject to the General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, at a mutually agreeable time and place.**

14.    All documents that identify persons involved in each Defendant's decision to use predictive dialers.

**ANSWER:    In addition to the General Objections, Defendants object to the use of the undefined term "predictive dialers" as vague, ambiguous, and an improper legal conclusion.  Defendants further object to this request as overly broad and unduly burdensome.**

15.     All documents which describe persons and/or phone numbers who are to be contacted using predictive dialers is determined.

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "predictive dialers" as vague, ambiguous, and an improper legal conclusion.  Defendants further object to this request as overly broad and unduly burdensome.**

16.     All documents which describe how to determine if a phone number belongs to a cellular telephone.

**ANSWER:     In addition to the General Objections, Defendants object to this request as overly broad and unduly burdensome, and it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence.**

17.     All documents which set forth or describe each of Defendant's respective document destruction and retention policies.

**ANSWER:     Subject to the General Objections, Defendants will make available for inspection and copying any non-privileged, relevant documents, to the extent they exist, at a mutually agreeable time and place.**

18.     All documents containing communications with recipients of automated calls complaining about such calls or requesting that such calls not be made.

**ANSWER:     In addition to the General Objections, Defendants further object to Request No. 18 on the grounds that it is premature given that no class has been certified in this matter.  Defendants further object to this request as overly broad and unduly burdensome, in that it would require MCM to manually and individually review every MCM account in Illinois over a four year period.  Finally,**

**Defendants object to the use of the undefined term "automated calls" as vague, ambiguous, and an improper legal conclusion.**

19.     For a time period from May 11, 2007 to May 31, 2011, all federal court and state court complaints filed against any Defendant attempting to or alleging a violation of the Telephone Consumer Protection Act.

**ANSWER:     In addition to the General Objections, Defendants object to Request No. 19 because it seeks information that is publicly available. Defendants further object to this request on the grounds that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence. Finally, Defendants object to this request as it is overly broad and unduly burdensome.**

20.     For a time period from May 11, 2007 to the present, all deposition transcripts and discovery issued to any Defendant and that Defendant's response in any lawsuit filed in either federal court or state court against any Defendant attempting to or alleging a violation of the Telephone Consumer Protection Act.

**ANSWER:     In addition to the General Objections, Defendants object to Request No. 20 because it seeks information that is subject to either a protective or confidentiality court order. Defendants further object to Request No. 20 because it seeks information that is publicly available. Defendants further object to this request on the grounds that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence. Finally, Defendants object to this request as it is overly broad and unduly burdensome.**

21.     All documents relating to contracts or agreements for the placement of automated calls using predictive dialers.

**ANSWER:     In addition to the General Objections, Defendants object to this request on the grounds that it is vague and ambiguous. Defendants further object to**

**the use of the undefined terms "predictive dialers" and "automated calls" as vague, ambiguous, and improper legal conclusions. Finally, Defendants object to this request to the extent that it seeks information that is subject to a confidentiality clause.**

22.     All documents relating to agreements or contracts for the purchase or sale or rental of predictive dialers.

**ANSWER:     In addition to the General Objections, Defendants object to the use of the undefined term "predictive dialers" as an improper legal conclusion. Defendants further object to this request to the extent that it seeks information that is subject to a confidentiality clause. Finally, Defendants further object to this request on the grounds that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence.**

23.     All documents Defendants plan to introduce into evidence at trial.

**ANSWER:     In addition to the General Objections, Defendants object to Request No. 23 because it is premature, and therefore overly broad and unduly burdensome. Defendants reserve the right to supplement their responses as discovery is on-going.**

24.     All documents Defendants plan to use for demonstrative purposes at trial.

**ANSWER:     In addition to the General Objections, Defendants object to Request No. 24 because it is premature, and therefore overly broad and unduly burdensome. Defendants reserve the right to supplement their responses as discovery is on-going.**

25.     All documents Defendants plan to use for impeachment purposes at trial.

**ANSWER:     In addition to the General Objections, Defendants object to Request**

**No. 25 because it is premature, and therefore overly broad and unduly burdensome.**

**Defendants reserve the right to supplement their responses as discovery is on-going.**

26.     All documents Defendants plan to use for rebuttal purposes at trial.

**ANSWER:     In addition to the General Objections, Defendants object to Request**

**No. 26 because it is premature, and therefore overly broad and unduly burdensome.**

**Defendants reserve the right to supplement their responses as discovery is on-going.**

27.     All documents which support or refute each Defendant's asserted Affirmative Defenses.

**ANSWER:     In addition to the General Objections, Defendants object to Request**

**No. 27 because it is premature, and therefore overly broad and unduly burdensome.**

**Defendants reserve the right to supplement their responses as discovery is on-going.**

28.     All documents including all recordings, messages, and communications relating to Plaintiff, or which are index, filed or retrievable under Plaintiff's name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to Plaintiff.

**ANSWER:     Subject to the General Objections, Defendants will make available for**

**inspection and copying any non-privileged, relevant documents, to the extent they**

**exist, at a mutually agreeable time and place.**

29.     All documents evidencing the payment or contract for predictive dialers used to call cellular telephone numbers with Illinois area codes (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872), on or after May 11, 2007 (28 U.S.C. §1658), and on or before May 31, 2011.

**ANSWER:     In addition to the General Objections, Defendants object to the use of**

**the undefined term "predictive dialers" as vague, ambiguous, and an improper legal**

**conclusion.  Defendants further object to this request on the grounds that it seeks information that is subject to a confidentiality clause.  Finally, Defendants object to this request on the grounds that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence.**

Dated:  July 18, 2011                                Respectfully submitted,

                                                              **MIDLAND CREDIT MANAGEMENT,**
                                                              **INC., MIDLAND FUNDING LLC, AND**
                                                    By:    **ENCORE CAPITAL GROUP, INC.**

                                                               s/Renee L. Zipprich
                                                              Renee Zipprich (rzipprich@dykema.com)
                                                              DYKEMA GOSSETT PLLC
                                                              10 South Wacker Drive, Suite 2300
                                                              Chicago, Illinois  60606
                                                              Phone: 312-876-1700
                                                              Fax:    312-627-2302

                                                              Theodore W. Seitz (tseitz@dykema.com)
                                                              DYKEMA GOSSETT PLLC
                                                              Capitol View
                                                              201 Townsend Street, Suite 900
                                                              Lansing, Michigan  48933
                                                              Phone: (517) 374-9100
                                                              Fax:    (517) 374-9191

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **July 18, 2011**, she served a copy of the foregoing to the

following:


Curtis C. Warner
<u>cwarner@warnerlawllc.com</u>
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Suite 560
Chicago, IL  60601
(312) 238-9820 – tel.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Edelman Combs Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603
312 739-4200

by U.S. Mail and email from 10 S. Wacker Drive, Suite 2300, Chicago, IL  60610 on July 18, 2011

s/Candace A. Mandel

CHICAGO\3308372.1
ID\RLZ - 097356/0103

# EXHIBIT B

**Subject: Re: Scardina v. Midland Credit Management, Inc. et al.- Rule 37 Correspondence**
**Date:** Tuesday, July 19, 2011 3:32 PM
**From:** Zipprich, Renee <RZipprich@dykema.com>
**To:** "'cmiller@edcombs.com'" <cmiller@edcombs.com>
**Cc:** Curtis Warner <cwarner@warnerlawllc.com>, "'DEDELMAN@edcombs.com'" <DEDELMAN@edcombs.com>

Cassandra:

I am happy to speak to you guys on the topics below, but I am out tomorrow due to previously-scheduled doctors appointments for my daughter. I can be available on Thursday. Let me know what time works.

**From**: Cassandra P. Miller [mailto:cmiller@edcombs.com]
**Sent**: Tuesday, July 19, 2011 04:18 PM
**To**: Zipprich, Renee
**Cc**: Curtis Warner <cwarner@warnerlawllc.com>; Dan Edelman <DEDELMAN@edcombs.com>
**Subject**: Scardina v. Midland Credit Management, Inc. et al.- Rule 37 Correspondence

Renee,

This email is being sent pursuant to Fed. R. Civ. P. Rule 37.  We are in receipt of Defendants' responses to Plaintiff's First Discovery Requests and find that Defendants responses are deficient in a number of respects.

Defendants have not complied with the Court's order that Defendants respond to discovery by the original July 18, 2011 deadline.  Defendants have failed to produce any documentation or provide any substantive information in response to Plaintiff's interrogatories and request to admit.  Instead, Defendants have raised a series of baseless objections in an attempt to avoid responding to Plaintiff's discovery. Defendants responses are internally inconsistent and nonsensical. Defendants deny the dates and times of the calls, but fail to produce any supporting account notes. Defendants appear to indicate that the calls were placed by some third party, but fail to identify this party.  Defendants assert that the calls were placed with the consent of the plaintiff, but fail to produce any documents evidencing this fact.

Defendants have responded to a number of the requests to produce that "Defendants will make available for inspection and copying any non-privileged, relevant documents...at a mutually agreeable time and place."  These documents should be produced immediately.  If necessary, I can have someone come to your office to pick up the documents today.

Last week you represented in open court that you were not and would not attempt to

avoid or slow down discovery. Your responses prove otherwise. Judge Lindberg's recent ruling, in addition to the expedited discovery schedule, make clear that these types of tactics will not be tolerated.

We are available to discuss this further tomorrow, however, if we have not reached an agreement by the close of the business day on Wednesday, July 20th, we will immediately move for a motion to compel.

Thanks,
Cassandra


Cassandra P. Miller
Associate Attorney
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (fax)

*** Notice from Dykema Gossett PLLC: To comply with U.S. Treasury regulations, we advise you that any discussion of Federal tax issues in this communication was not intended or written to be used, and cannot be used, by any person (i) for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service, or (ii) to promote, market or recommend to another party any matter addressed herein. This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately. Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message. DYKEMA

# EXHIBIT C

**Subject: Midland_Scardina_document_production**
**Date:** Thursday, July 21, 2011 10:48 AM
**From:** Zipprich, Renee <RZipprich@dykema.com>
**To:** "'cmiller@edcombs.com'" <cmiller@edcombs.com>, Curtis Warner <cwarner@warnerlawllc.com>, "'Cathleen M.
Combs'" <ccombs@edcombs.com>, 'Dan Edelman' <DEDELMAN@edcombs.com>, "'jlatturner@edcombs.com'"
<jlatturner@edcombs.com>
**Cc:** "Natarelli, Brett" <BNatarelli@dykema.com>, Ted Seitz <tseitz@dykema.com>, "Gottlieb, Richard"
<RGottlieb@dykema.com>

Counsel, please see attached documents, being produced pursuant to the protective order that
will be filed in this matter.

The only specific issues raised in your Rule 37 email are (1) defendants fail to produce any
account notes re: dates and times of calls - the call log is attached; (2) defendants appear to
indicate that the calls were placed by some third party  but fail to identify -- MCM uses Noble
dialers, and Noble has the exclusive license (MCM does not actually make the calls); and (3)
defendants assert that the calls were placed with the consent of the plaintiff, but fail to
produce documents evidencing this fact -- see first page of the production, which is an account
summary from the seller, showing Plaintiff's alleged "cell" number as the home number,
provided to MCM by the seller.

Other than vague/broad references to noncompliance, no other issue is specifically set forth.
You reference "baseless objections," but do not identify a single objection that fits this
description.  We are happy to discuss this further on our 11 am call.

Thank you.


Renée L. Zipprich
Member
**DYKEMA**
10 S. Wacker Drive
23rd Floor
Chicago, Illinois 60606
Direct line: 312.627.2555
Fax: 312.627.2302
rzipprich@dykema.com
www.dykema.com
*** Notice from Dykema Gossett PLLC: To comply with U.S. Treasury regulations, we advise you
that any discussion of Federal tax issues in this communication was not intended or written to
be used, and cannot be used, by any person (i) for the purpose of avoiding penalties that may

# EXHIBIT D

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States

### United States Judicial Panel on Multidistrict Litigation

## Notice of Electronic Filing

The following transaction was entered on 7/29/2011 at 8:46 AM EDT and filed on 7/29/2011

| | |
|---|---|
| **Case Name:** | IN RE: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation |
| **Case Number:** | MDL No. 2286 |
| **Filer:** | |
| **Document Number:** | 2(No document attached) |

**Docket Text:**
**MDL Number 2286 Assigned -- MOTION FOR TRANSFER ACCEPTED FOR FILING re: pldg. ([1] in Pending No. 105) Associated Cases: Pending No. 105, CAS/3:10-cv-02261, CAS/3:10-cv-02600, ILN/1:11-cv-03104, ILN/1:11-cv-03149 (TB)**

| | |
|---|---|
| **Case Name:** | Tovar v. Midland Credit Management |
| **Case Number:** | CAS/3:10-cv-02600 |
| **Filer:** | |
| **Document Number:** | 1(No document attached) |

**Docket Text:**
**MDL Number 2286 Assigned -- MOTION FOR TRANSFER ACCEPTED FOR FILING re: pldg. ( [1] in Pending No. 105) Associated Cases: Pending No. 105, CAS/3:10-cv-02261, CAS/3:10-cv-02600, ILN/1:11-cv-03104, ILN/1:11-cv-03149 (TB)**

| | |
|---|---|
| **Case Name:** | Scardina v. Midland Credit Management, Inc. et al |
| **Case Number:** | ILN/1:11-cv-03149 |
| **Filer:** | |
| **Document Number:** | 1(No document attached) |

**Docket Text:**
**MDL Number 2286 Assigned -- MOTION FOR TRANSFER ACCEPTED FOR FILING re: pldg. ( [1] in Pending No. 105) Associated Cases: Pending No. 105, CAS/3:10-cv-**

**02261, CAS/3:10-cv-02600, ILN/1:11-cv-03104, ILN/1:11-cv-03149 (TB)**

**Case Name:**  Martin v. Midland Funding, LLC
**Case Number:**  ILN/1:11-cv-03104
**Filer:**
**Document Number:** 1(No document attached)

**Docket Text:**
**MDL Number 2286 Assigned -- MOTION FOR TRANSFER ACCEPTED FOR FILING re: pldg. ( [1] in Pending No. 105) Associated Cases: Pending No. 105, CAS/3:10-cv-02261, CAS/3:10-cv-02600, ILN/1:11-cv-03104, ILN/1:11-cv-03149 (TB)**

**Case Name:**  Robinson v. Midland Funding, LLC
**Case Number:**  CAS/3:10-cv-02261
**Filer:**
**Document Number:** 1(No document attached)

**Docket Text:**
**MDL Number 2286 Assigned -- MOTION FOR TRANSFER ACCEPTED FOR FILING re: pldg. ( [1] in Pending No. 105) Associated Cases: Pending No. 105, CAS/3:10-cv-02261, CAS/3:10-cv-02600, ILN/1:11-cv-03104, ILN/1:11-cv-03149 (TB)**


**MDL No. 2286 Notice has been electronically mailed to:**

**MDL No. 2286 Notice will not be electronically mailed to:**

**CAS/3:10-cv-02600 Notice has been electronically mailed to:**

Joseph Darrell Palmer darrell.palmer@cox.net

**CAS/3:10-cv-02600 Notice will not be electronically mailed to:**

**ILN/1:11-cv-03149 Notice has been electronically mailed to:**

Curtis Charles Warner cwarner@warnerlawllc.com

James O. Latturner jlatturner@edcombs.com

Daniel A. Edelman courtecl@edcombs.com

Cathleen M. Combs ccombs@edcombs.com

Cassandra P. Miller cmiller@edcombs.com

Brett J Natarelli bnatarelli@dykema.com

**ILN/1:11-cv-03149 Notice will not be electronically mailed to:**

**ILN/1:11-cv-03104 Notice has been electronically mailed to:**

Alexander Holmes Burke ABurke@BurkeLawLLC.com

Theodore Wilson Seitz tseitz@dykema.com

Renee Lynn Zipprich rzipprich@dykema.com

James Michael Golden jgolden@dykema.com

**ILN/1:11-cv-03104 Notice will not be electronically mailed to:**

**CAS/3:10-cv-02261 Notice has been electronically mailed to:**

Joshua Swigart josh@westcoastlitigation.com

Douglas J Campion doug@djcampion.com

Amy M Gallegos amy.gallegos@hoganlovells.com, mae.chester@hoganlovells.com

Abbas Kazerounian ak@kazlg.com

**CAS/3:10-cv-02261 Notice will not be electronically mailed to:**

# EXHIBIT E

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

---

## FORM 10-K

---

**(Mark One)**

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2010 or

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from             to             .

### COMMISSION FILE NUMBER: 000-26489

---

# ENCORE CAPITAL GROUP, INC.

#### (Exact name of registrant as specified in its charter)

---

| | |
|---|---|
| **Delaware** | **48-1090909** |
| **(State or other jurisdiction of incorporation or organization)** | **(IRS Employer Identification No.)** |
| **8875 Aero Drive, Suite 200 San Diego, California** | **92123** |
| **(Address of principal executive offices)** | **(Zip code)** |

**(877) 445-4581**

#### (Registrant's telephone number, including area code)

---

Securities registered pursuant to Section 12(b) of the Act:

| <u>Title of Each Class</u> | <u>Name of Each Exchange on Which Registered</u> |
|---|---|
| Common Stock, $.01 Par Value Per Share | The NASDAQ Stock Market LLC |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☐   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

**Table of Contents**

department, we take significant steps to ensure compliance with applicable laws and regulations and seek to promote consumer satisfaction. Our Quality Assurance team aims to enhance the skills of account managers and to drive compliance initiatives through active call monitoring, account manager coaching and mentoring, tracking and distribution of Company-wide best practices. Finally, our Consumer Relations department works directly with consumers to seek to resolve incoming consumer inquiries and to respond to consumer disputes as they may arise.

## *Information Technology*

*Technical Infrastructure.* Our internal network has been configured to be redundant in all critical functions, at all sites. This backup system has been implemented within the local area network switches, the data center network, and includes our redundant Multiprotocol Label Switching (MPLS) networks. We have the capability to handle high transaction volume in our server network architecture, which can be scaled seamlessly with our future growth plans.

*Predictive Dialer Technology.* During 2010, we upgraded our predictive dialer technology to accommodate the continued expansion of our call centers. With this upgrade, we expect to have additional call volume capacity and greater efficiency through shorter wait times and an increase in the number of live contacts. We believe this will help maximize account manager productivity and further optimize the yield on our portfolio purchases. We also believe that the use of predictive dialing technology helps us to ensure compliance with certain applicable federal and state laws that restrict the time, place, and manner in which debt collectors can call consumers.

*Computer Hardware.* We use a robust computer platform to perform our daily operations, including the collection efforts of our global workforce. Because our custom software applications are integrated within our database server environment, we are able to process transaction loads with speed and efficiency. The computer platform offers us reliability and expansion opportunities. Furthermore, this hardware incorporates state of the art data security protection. We back up our data daily, and store copies at a secured off-site location. We also mirror our production data to a remote location to give us full protection in the event of the loss of our primary data center. To ensure the integrity and reliability of our computer platform we periodically engage outside auditors specializing in information technology to examine both our operating systems and disaster recovery plans.

*Process Control.* To ensure that our entire infrastructure continues to operate efficiently and securely we have developed a strong process and control environment. These controls govern all areas of the enterprise from physical security and virtual security, change management, data protection and segregation of duties.

## *Ability to Attract and Retain Employees*

Of crucial importance to our success is the recruitment and retention of our key employees, account managers, and executive management team. In addition to offering attractive compensation structures for account managers, we may offer employee programs that promote personal and professional goals such as leadership and skills training, tuition assistance in support of continued education, and wellness initiatives that earned us distinction as one of San Diego's Healthiest Employers in 2010. We believe that these tangible benefits, combined with intangible differentiators, such as a diverse employee base and the prospect of living and working in an extremely temperate climate where our Corporate Headquarters is located, all contribute to a sustainable competitive advantage with respect to recruitment and retention.

## *Competition*

The consumer credit recovery industry is highly competitive and fragmented. We compete with a wide range of collection companies, financial services companies, and a number of well-funded entrants with limited experience in our industry. We also compete with traditional contingency collection agencies and in-house

6

Table of Contents

would reduce or eliminate their obligations under their receivables. When we acquire receivables, we generally require the originating institution to contractually indemnify us against losses caused by its failure to comply with applicable statutes, rules and regulations relating to the receivables before they are sold to us.

Federal statutes further provide that, in some cases, consumers cannot be held liable for, or their liability is limited with respect to, charges to their credit card accounts that resulted from unauthorized use of their credit cards. These laws, among others, may give consumers a legal cause of action against us, or may limit our ability to recover amounts owing with respect to the receivables, whether or not we committed any wrongful act or omission in connection with the account.

State and federal laws concerning identity theft, privacy, data security, the use of automated dialing equipment and other laws related to consumers and consumer protection, as well as laws applicable to specific types of debt, impose requirements or restrictions on collection methods or our ability to enforce and recover certain of our receivables.

The laws described above, among others, as well as any new or changed laws, rules or regulations, may adversely affect our ability to recover amounts owing with respect to our receivables.

### *Employees*

We are a Delaware corporation incorporated in 1999. As of December 31, 2010, we had approximately 1,900 employees. None of our employees is represented by a labor union. We believe that our relations with our employees are good.

## Item 1A—Risk Factors

This section highlights some specific risks affecting our business, operating results and financial condition. The list of risks is not intended to be exhaustive and the order in which the risks appear is not intended as an indication of their relative weight or importance.

**Risk Factors**

### *We are exposed to risks associated with worldwide financial markets and the global economy.*

As a result of the global economic downturn, individual consumers are experiencing high unemployment, a lack of credit availability, and depressed real estate values. Continued financial pressure on the consumer on these fronts could reduce our ability to collect on our purchased consumer receivable portfolios and would adversely affect their value. Further, increased financial pressure on the distressed consumer may result in additional regulatory restrictions on our operations and increased litigation filed against us. We are unable to predict the likely duration or severity of the current disruption in financial markets and adverse economic conditions and the effects they may have on our business, financial condition and results of operations.

### *Our quarterly operating results may fluctuate significantly.*

Our quarterly operating results will likely vary in the future due to a variety of factors that could affect our revenues and operating expenses in any particular quarter. We expect that our operating expenses as a percentage of collections will fluctuate in the future as we expand into new markets, increase our new business development efforts, hire additional personnel and incur increased insurance and regulatory compliance costs. In addition, our operating results have fluctuated and may continue to fluctuate as the result of the factors described below and elsewhere in this Annual Report on Form 10-K:

- the timing and amount of collections on our receivable portfolios, including the effects of seasonality and economic recession;

- any charge to earnings resulting from an allowance against the carrying value of our receivable portfolios;

8

# EXHIBIT F



**Industries**

[ Overview | Collection | Communications | Consumer Products | Education | Financial Services | Fundraising | Healthcare ]

[ Home & Personal Services | Market Research | Mortgage | Newspapers & Publishing | Service Bureaus | Travel & VO ]

## Collection

Collection Contact Management Software from Noble Systems helps collection organizations obtain more debt promises-to-pay, more efficiently and for less cost. Noble Systems offers powerful technology solutions for the Collection industry that can help you increase your right-party contact rates and streamline the communications process. Noble's unified solutions give you the tools to enhance the productivity of your collectors, save resources, gain more promises-to-pay, and improve your overall collection results.

---

### Build Productivity with More Right-Party Contacts
The Noble communications platform uses one of the industry's most advanced dialing algorithms and superior tone and voice detection to drive collector productivity rates. With 95%+ answering machine detection, and busy, no answer, and disconnect (temporary and permanent) tone recognition, collectors receive only live debtors, instead of unproductive numbers. Multiple phone numbers per debtor, account ownership and preview dialing, and multi-line dialing also help build contact rates.

### Save Collector Resources with Personalized Debtor Messaging
Outbound messaging and text-to-speech tools help ensure that collectors are talking to the correct people. If the debtor is available, you can transfer the call to a collector; if not, leave an automated message with a return phone number. For more efficient service, the Noble Solution can be integrated with your existing collections system to provide account information and payment options and record contact results automatically, without requiring a collector.

### Increase Debtor Response with Interactive Tools & Payment Options
Self-service menus allows debtors to respond immediately by entering a credit card number on the keypad for automated processing or getting an address to mail a payment. Or, they can choose to speak with a collector to negotiate a settlement and receive more account details.

### Improve Debt-Recovery & Service Levels with Effective Routing
The use of skills-based routing can increase your collection results by sending debtors to more experienced collectors first, as they are available. 'Tougher' accounts can be routed to more effective closers, and Account Ownership features allow collectors to 'own' specific accounts. Digital recording tools capture promises-to-pay for later verification and debtors can be transferred as needed, without hanging up and dialing another number.

### Unified and Flexible Collector Desktop
The Unified Collector Desktop can improve the workflow for your collectors and help increase their efficiency. Noble's integration tools help you consolidate multiple applications, including the call script, call utilities, collection software, databases, and more, into a single interface. You can seamlessly integrate collector scripts with information and data and link applications in real-time. Your collectors will have access to all of the information and tools they need to work with debtors. Flexible collector scripting allows you to manage any project, including the flow of a call or any interaction process. You can also control branding, how representatives capture or provide information, etc. Your non-technical managers can make changes in seconds.

### Create a Unified Environment for All Communications
Collectors can be assigned to handle both outbound and inbound calls at the same time, promoting increased efficiency. Dialing automatically adjusts to fluctuating call volumes while optimizing collector activity. Collectors can work one-on-one with debtors on assigned accounts. Email and web support help you provide completely unified collection services for multimedia channels.

### Maximize Performance with the Dynamic Management Suite
Manage all of your collections activities with our comprehensive Management Suite. Designed in a user-friendly environment, our manager tools allow users to build scripts, control center resources, monitor real-time performance, and create custom reports, without requiring high-level IT experts.

---

**Learn More:**

» Collection Solutions

» Download our guide to Best Practices in Collection Center Technologies

» Case Studies
   Apex Credit Mgmt Ltd
   FBCS Inc
   Penncro Associates, Inc
   Student Loan Collections
   Tate & Kirlin Associates
   Vilcol

### Features:

» Flexible Collector Scripting – The Collector script controls how information is captured and the workflow of the complete collection process. Noble's scripting solution offers a flexible, intuitive environment and can work with your current applications.

» Multiple Numbers per Record – Noble stores multiple phone numbers per record, with a main number and alternate numbers (such as home, work, cell, etc.). You can easily create custom dialing plans to dial different numbers from the record based on the time of day.

» **Multiple Dialer Modes** – Predictive dialing is one of several collections dialer modes. The Noble solution provides both predictive and non-predictive dialing modes (preview, dial now, manual). You can choose the dialing mode for each individual campaign, based on program needs, and assign different dialing modes to different collector groups, if desired.

» **Automated Messaging** – Outbound messaging helps you increase contact rates while using collector resources more efficiently. Automated messages can be used when an answering machine is detected, leaving a call-back number for more information. Live contacts may also be directed to a pre-recorded message to help identify the right-party and to provide debtor self-service, with access to personalized account information or the option to speak with a collector.

» **Debtor Contact Management** – Noble's Debtor Contact Management System (DCMS) helps improve collector productivity with Account Ownership. Managing specific accounts helps collectors build relationships with debtors and increase payment rates. Collectors can review their work lists and select a record to view debtor information and account history before the call is dialed.

» **Real-time Record Update** – It is critical to be able to update campaigns in real-time so that parties are not called inappropriately. Noble's integrated database updates records immediately as information is gathered and calls are completed. For instance, a customer who makes a payment in the morning can be removed from the call list so that they will not receive a call later in the day.

» **Monitoring and Reporting** – Reports and activities can be monitored and viewed in real-time to manage programs more effectively. Agencies can keep clients informed of campaign performance and results with data exports, summary and detail reports, and direct access to monitor collectors assigned to their accounts.

» **Collector Call-back** – Allows collectors to schedule callbacks as required, with an on-screen calendar to select specific dates and times. The callbacks can be routed to a specific collector or group of collectors.

» **Network Level Message Classification** – Many debtors change their phone numbers to avoid collection calls. The solution differentiates, identifies and categorizes each network message for every number and record dialed. All information is stored in the database so that it can be easily reported and queried to build new targeted calling lists.

» **Skills-based Routing** – Call routing based on collector skills can give priority to collectors according to proficiency level or other variables.

» **Powerful Call Blending Functionality** – Blending dramatically reduces the costs of maintaining two separate inbound and outbound collector groups. Collectors can move fluidly between both incoming and out-dialed calls, without having to log in and out of programs between contacts.

---

**Benefits:**

» More collections promises-to-pay, accomplished more efficiently at a lower cost.

» Capture, segment and analyze customer contact data for appropriate follow up collection actions.

» Seamless integration with established systems and databases.

» Manage each contact appropriately based on debt delinquency level or other rules.

» Professional customer interactions, at the right time, with the right channel and appropriate data.

» Route calls to the appropriate self-service channel or agent skill group.

» Multiple channels for contacts, including email, fax, web, text, predictive dialers, and voice broadcasting.

» A unified inbound outbound software solution provides advanced capabilities that allow your team to manage all phases of the collections process.

Privacy Policy | Terms & Conditions | Site Map
© Copyright 2010 Noble Systems Corporation. All Rights Reserved.
Home | Company | Products | Solutions | Industries | Resources | Case Studies | News | Contact

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOANNE F. BALBARIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH STAR CAPITAL ACQUISITION, | ) | Case No.: 10 CV 01846 |
| LLC; ZENITH ACQUISITION | ) | |
| CORPORATION; DATA SEARCH N.Y. | ) | Judge Bucklo |
| INC. d/b/a TRACKAMERICA; BLITT | ) | |
| AND GAINES, P.C.; and NELSON, | ) | Magistrate Judge Cox |
| WATSON & ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CARLA A. HUBBS, | ) | |
| on behalf of herself and a class and subclasses, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 CV 02154 |
| v. | ) | (Reassigned for Relatedness) |
| | ) | |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | ) | Judge Bucklo |
| and DATA SEARCH NY, INC., d/b/a | ) | |
| TRAK AMERICA, | ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |

## DEFENDANT, NELSON, WATSON & ASSOCIATES, LLC'S ANSWER TO PLAINTIFF BALBARIN'S JUNE 15, 2011 DISCOVERY

Defendant, NELSON, WATSON & ASSOCIATES, LLC, ("NWA") through its undersigned attorneys, pursuant to FRCP Rule 33, for its Answer to Plaintiff Balbarin's June 15, 2011 Discovery, states as follows:

**Interrogatory No. 1:** For each person who corresponds to the approximately 2,074 persons Nelson identified in Document 202, p. 1, that "possibly fall within" the class definition, please state:

(a) The telephone number(s) Nelson, Watson & Associates LLC, was provided by North Star Capital Acquisition, LLC, or Data Search NY, Inc., d/b/a Trak America, in the placement file;

(b) The cellular telephone number(s) that Nelson, Watson & Associates LLC called and left a prerecorded message;

(c) The cellular telephone number(s) that were obtained from Experian that Nelson, Watson & Associates LLC called and left a prerecorded message;

(d) The Bates number(s) of all documents that show that the cellular telephone number(s) was provided by the person to their original creditor;

(e) The Bates number(s) of all documents that show that the cellular telephone number(s) was provided by the person to either North Star Capital Acquisition, LLC, Data Search NY, Inc., d/b/a Trak America, or Nelson; and

(f) The dates that phone number was provided by the person to either his/her original creditor, North Star Capital Acquisition, LLC, Data Search NY, Inc., d/b/a Trak America, or Nelson.

**ANSWER:**

Objection. This interrogatory is unduly burdensome as it requires an individualized inquiry of each current class member's records. Additionally, a majority of this

information has been disclosed by NWA and is readily available to plaintiff. Without waiving this objection, NWA Answers as follows:

(a) The telephone numbers transferred by NorthStar to NWA in conjunction with the placement process are correlated according to each current class member. See NWA 015356 – NWA 015400, provided herewith.

(b) The telephone numbers that were identified by the scrub performed by NWA in relation to this litigation on September 1, 2010, identifying those phone numbers that were cell phones on the date of the scrub, are correlated according to each current class member. See NWA 015401 – NWA 015445, provided herewith.

(c) The telephone numbers that were obtained from Experian are noted on each individual current class member's Debtor Overview Report. See NWA 004381 – NWA 011342. Additionally, the phone numbers that were identified by the scrub performed by NWA in relation to this litigation on September 1, 2010, identifying those phone numbers that were cell phones on the date of the scrub, are correlated according to each current class member. See NWA 015401 – NWA 015445. Whether a prerecorded message was left at a particular telephone number is further noted as part of each class member's Debtor Overview Report. NWA 004381 – NWA 011342.

(d) The phone numbers that were provided by current class members to their respective original creditors which matched those phone numbers identified by the scrub performed by NWA in relation to this litigation on September 1, 2010, identifying those phone numbers that were cell phones on the date of the scrub, are as follows:



1) Shirley ▮▮▮ - NWA 12,979
2) Ronald ▮▮▮ - NWA 13,716
3) Rubin ▮▮▮ - NWA 13,918
4) John ▮▮▮ - NWA 14,195
5) Martha ▮▮▮ - NWA 14,998
6) Kristy ▮▮▮ – NWA 15,040
7) Kriston ▮▮▮ – NWA 15,192
8) Herve ▮▮ – NWA 11,731
9) William ▮▮▮ – NWA 11,733
10) Lisa ▮▮ – NWA 11,734
11) John ▮▮▮ – NWA 11,739-740
12) Scott ▮▮▮ – NWA 11,742-743
13) Tracey ▮▮ – NWA 11,750
14) Mantas ▮▮▮ – NWA 11,751
15) Devon ▮▮▮ – NWA 11,753
16) Andrew ▮▮▮ – NWA 11,754



17) Steven ███████ – NWA 11,756
18) Mark ██████– NWA 11,757-758
19) Michael ███████ – NWA 11,357
20) Aaron ████████ – NWA 11,478
21) S. Aller – NWA 11,478
22) Kraig █████– NWA 11,478
23) Casaan ██████ – NWA 11,478
24) April ██████ – NWA 11,478
25) Gregg ███████– NWA 11,478
26) Chudhary ████████– NWA 11,478
27) Mohammad ████████– NWA 11,478 and 11,492
28) Jeffrey ██████ – NWA 11,478
29) Julietta ███████– NWA 11,478
30) Jennifer ███████– NWA 11,478
31) Maria █████ – NWA 11,478
32) Jeromy ████████ – NWA 11,478
33) Galena █████ – NWA 11,478
34) Brian ██████– NWA 11,478
35) Margaret █████ – NWA 11,478
36) Lindsey ███████ – NWA 11,478
37) Phillip████████– NWA 11,478
38) Jessica ███████ – NWA 11,670
39) Nada █████ – NWA 11,539
40) Monroe ██████ – NWA 11,579
41) Elvira ███████– NWA 11,562
42) Crystal████████ – NWA 11,618
43) John ████████ – NWA 11,653
44) Reham ██████– NWA 11,522

**Investigation Continues.**

(e) The phone numbers that were identified by the scrub performed by NWA in relation to this litigation on September 1, 2010, identifying those phone numbers that were cell phones on the date of the scrub (See NWA 015401 – NWA 015445), and which match the telephone numbers that were transferred by NorthStar to NWA in conjunction with the placement process (See NWA 015356 – NWA 015400) for the current class members are as follows:



1) Hamid ████████ – NWA 015356
2) Hamid ████████ – NWA 015356
3) William █████████ – NWA 015358
4) William █████████ – NWA 015358
5) William █████████ – NWA 015358

4

**(f) The date these telephone numbers were transferred by NorthStar to NWA in conjunction with the placement process are correlated according to each current class member. See NWA 015356 – NWA 015400. The date on which the original creditor was provided the telephone number is noted on the respective credit application. See Answer (d), supra. Investigation continues.**

Dated: July 29, 2011

NELSON, WATSON & ASSOCIATES, LLC

Daniel Kuzmitski
Director of Training and Compliance of
Nelson, Watson & Associates, LLC

As to Objections:

Jason E. Hunter
LITCHFIELD CAVO LLP
One of NWA's Attorneys

Jason E. Hunter
LITCHFIELD CAVO LLP
303 West Madison, Suite 300
Chicago, Illinois 60606-3300
(312) 781-6618,-6587
(312) 781-6630 Fax

David M. Schultz
Justin M. Penn
HINSHAW & CULBERTSON LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000