IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVE SCARDINA, individually and on behalf of a class, <br><br> Plaintiff, <br><br> vs. <br><br> MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, ENCORE CAPITAL GROUP, INC., <br><br> Defendants. | Case No. 11-cv-3149 <br><br> The Honorable George W. Lindberg <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANTS' RESPONSE TO MOTION TO COMPEL
AND CROSS MOTION TO EXTEND DISCOVERY DEADLINE**

**INTRODUCTION AND BACKGROUND**

Plaintiff's Motion to Compel Discovery, for Rule to Show Cause, and For Sanctions ("Motion") should be denied in its entirety. Defendants' counsel timely responded to Plaintiff's Discovery Requests, has already produced documents, and has since been diligently working with Defendants to gather additional data and documents that Defendants have indicated they would produce. The bulk of what Plaintiff requests consists of documents that would answer whether tens of *thousands* of **putative** class members gave consent for their cell phones to be called. As numerous courts have recognized in similar cases, this is a mammoth data-mining task that presents numerous technical challenges. It is patently unreasonable for Plaintiff to demand this large volume of material in such an abbreviated time frame under threat of sanctions.

In spite of these challenges, Plaintiff's counsel has refused to work with Defendants' counsel in good faith, instead filing this Motion just *one day* after an in-person settlement

meeting where counsel for Defendants reported on her diligent investigations on-site in San Diego at Defendants' offices that took place earlier in the week. This trip occurred just three days after the parties' Rule 37 meet and confer discussion of this Motion, where Defendants' counsel informed Plaintiff's counsel of her intention to fly to San Diego to interview multiple potential witnesses and locate additional documents. Even worse, Plaintiff's counsel was also informed at the settlement meeting that not only would Defendants be revising their written discovery responses and producing additional documents, but that undersigned counsel (who had conducted the investigations in San Diego) was called to Michigan to attend an unexpected family funeral on the one day in between the San Diego trip and the settlement meeting. Accordingly, Plaintiff's counsel's tactics not only violate the spirit of Rule 37 in his wholesale disregard for Defendants' discovery efforts, they violate basic human courtesies.

In short, Defendants are moving as quickly as possible to conduct discovery, but Plaintiff has abandoned any pretense of honest, good-faith resolution of inevitable difficulties that arise in conducting discovery in a putative class action of this scale, and is instead attempting to use gamesmanship and technicalities to gain a litigation advantage that is completely unwarranted under the circumstances here.

Plaintiff's counsel's motivation is clear: this action is what is commonly termed a "copy-cat" action of two nationwide putative class actions that were pending against the same Defendants in California well before this matter was filed and both of which completely subsume the class here. And as Plaintiff mentions in his Motion, counsel for the Defendants in the California actions recently filed a motion to have the cases transferred and consolidated in a multi-district litigation ("MDL") proceeding, given that the issues are identical, the discovery

will be duplicative, and the class periods completely over-lap.[1] It is abundantly clear that Plaintiff's counsel's goal is not to obtain relief for their client, but rather to jockey for position in the MDL proceedings.

Notwithstanding the above, and based on the detailed explanation below and the Declaration of Renee Zipprich (attached as Exhibit A), counsel for Defendants, it has become abundantly clear over the last few weeks that it will not be possible to complete discovery by September 28, 2011, because discovery will likely entail third-party discovery to the creditors from whom Defendants purchased the accounts, as well as a search of the dialing systems utilized by Defendants in four different call centers located in Minnesota, Arizona, California, and India. As courts across the country have recognized in identical class actions involving the exact alleged violation of the TCPA, this type of discovery will take an immense amount of "time and effort" on the part of Defendants. *See Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 504 (N.D. Ill. 2009).

For the reasons explained below, Defendants request that the Motion be denied. Moreover, Defendants respectfully request that the discovery deadline be extended so that Defendants may properly conduct the discovery required to prove not only their defense of consent, but to demonstrate that the dialing systems used by Defendants are not subject to the TCPA in the first instance.

---

[1] On July 29, 2011, separate counsel representing Midland Credit Management, Inc., in similar TCPA class actions in California filed a Motion to Transfer four cases, including this one, to a Multidistrict Litigation panel as the cases involve similar issues. *See Tovar v. Midland Credit Management*, No. 3:10-cv-02600 (S.D. Cal.).

All four cases involve identical issues of fact, overlapping putative classes, and the same defendants, and are thus likely to be litigated together. Rather than duplicate class discovery, it would be a far more judicious use of the parties' time to instead coordinate one discovery effort appropriate for all of the actions likely to be consolidated.

## ARGUMENT

### Rule 26(f) Conference Occurred Immediately

1.  Plaintiff opens his Motion by asserting that the initial Rule 26(f) conference was somehow delayed, or that Defendants should have consented to allowing discovery to be issued prior to the conference occurring. *See* Motion ¶ 3. But simply reviewing the dates belies Plaintiff's contention: Plaintiff first requested a Rule 26(f) conference on June 8, 2011, the *same day* as the *initial* status conference in this case, and just eight days after that first status hearing, the parties held their Rule 26(f) conference on June 16, 2011.

2.  Showing an obvious disinterest in candidly discussing the scope of potential discovery as required in a Rule 26(f) conference, and a reasonable timeline for production, Plaintiff simply served prepared discovery requests the *same day,* immediately following the conference.

### Defendants Have Not Asserted Any Objection Based On The Need For A Protective Order

3.  On July 13, 2011, Plaintiffs moved to bar any objections based on the need for a protective order – a preemptive motion inasmuch as Defendants had not yet raised any such objections. Plaintiff's motion was denied as moot because Defendants represented they would not object to Plaintiff's discovery requests based upon the need for entry of a protective order. *See* DE 31.

4.  As Defendants represented, none of Defendants' Responses to Plaintiff's First Requests for Admission, Interrogatories, and Requests for Production of Documents ("Discovery Requests") asserted an objection based upon a need for entry of a protective order. As to just one Document Request response, No. 20, Defendants objected to producing the information inasmuch as a pre-existing protective order *already* protected the information sought – an entirely different issue – and in three other responses, to Document Request Nos. 21, 22, and 29,

that a pre-existing confidentiality requirement likewise applied to the information sought. These particular Document Requests seek information as to agreements that Defendants have with third-parties who control the telephone dialers, and records that those third-parties may have. Defendants' objection to producing such information is not that it will only do so under a protective order; rather, Defendants' objection is that they are contractually barred from producing the information absent court order.

5. Accordingly, nothing about Defendants' responses to Document Request Nos. 20-22 and 29 amounts to a breach of this Court's July 13, 2011 Order (DE 31).

### Plaintiff Is Unwilling To Clarify Undefined Legal Conclusion Terms

6. Plaintiff's Discovery Requests use legal terms of art such as "automated call," "predictive dialer" and "prerecorded message." Defendants' objection is that these terms are undefined and call for legal conclusions given that these phrases have specific and technical meanings (and legal implications) under the TCPA. *See, e.g.*, 47 U.S.C. § 227(a) (defining "automated telephone dialing system"). Defendants deny that the dialers at issue in this case legally meet any of those definitions, and are fully within their right to do so. *See* Answer (DE 24) at ¶¶ 25-29. Defendants should not be compelled by answering Plaintiff's Discovery Requests to effectively admit liability in the lawsuit, but by using legal terms of art instead of factual descriptions, Plaintiff's Discovery requests do exactly that.

7. Plaintiff's Discovery Requests did not define any of these terms, and Plaintiff *still* fails to specify or clarify the definitions. Plaintiff disingenuously asserts in his Motion that the "common English meaning" should be used, but during the Rule 37 meet and confer call on July 21, 2011, in response to Defendants' counsel seeking clarification, Plaintiff's counsel instead asserted that the proper definition was meant to be the legal definition used in the TCPA

statute and as interpreted by the Federal Trade Commission and Federal Communications Commission in written regulatory rulings – clearly a legal conclusion. *See* Zipprich Decl. at ¶ 3.

8. Defendants are of course willing to abandon any vagueness objections if the *factual* terms of the requests are specified. Moreover, Defendants are, and have been, willing to work with Plaintiff's counsel to promptly clarify any such definitions and avoid involving the Court in a basic definitional clarification. Thus far, however, Plaintiff's counsel has been unwilling to engage in any discussion as to agreeing on factual definitions, and when Plaintiff's counsel has engaged in such discussions at all, their "clarification" is only a moving target that does not involve a set, written definition that the parties can work with. Instead, Plaintiff makes contradictory references to "plain meanings" of technical terms, "industry" usage however Defendants might define it, or regulatory meanings as defined by federal legal authorities such as the FTC.

9. While Defendants and the third-party providers of the dialing system have used similar terms in communications within the industry or to the public, it does not at all follow that Defendants' meaning, and the third-parties' meaning, when using such terms matches whatever meaning Plaintiff intends. Moreover, many of the terms Plaintiff uses have frequently changed over time, at least as used in the industry and as defined by the FTC, making the issue of what factual definition Plaintiff wishes to apply to its discovery requests all the more important. For just these reasons, Defendants have sought clarification that Plaintiff has been unwilling to provide.

**Defendants' Discovery Responses Were Timely**

10. Plaintiff's Motion is based on the mistaken premise that the Court ordered production of documents by July 18, 2011. But the Court issued no such order, instead merely stating that the initial due date for Defendants' *responses* to Plaintiff's discovery requests was

July 18, 2011, and the Court would not postpone it solely due to Defendants' Motion to Stay. *See* DE 32. Defendants *did* respond to Plaintiff's Discovery Requests by July 18, 2011, and Defendants have diligently proceeded with producing documents and continuing investigations to acquire more information where Defendants indicated it would produce documentation.

11. Defendants have already produced documents that are extremely relevant to this action. Defendants produced the Plaintiff's account records, including those showing that the Plaintiff's cell phone number was provided to Defendants by the seller of the debt, evidencing consent. Defendants have likewise produced technical manuals for the dialers, and the purchase agreement involving the seller from whom Defendants purchased Plaintiff's debt. Finally, Defendants have produced potentially relevant insurance policies. *See* Zipprich Decl. at ¶ 5.

**Plaintiff's Requests Are Overly Broad, Unduly Burdensome, And Premature**

12. Plaintiff's Document Requests are extremely broad in that they seek detailed account information on tens of thousands—if not millions—of putative class members. Plaintiff seeks to ascertain the identity of the class by Defendants' records of which cell phones were called, but Defendants' records of past calls do not show what calls were to cellular phones as opposed to landlines. There are instances when debtors call in and request that Defendants call their cell phone and indicate that the number is a cell phone, and that information is coded in the system as "commentary/notes" and it is done on an account by account basis. That search alone could take months to conduct and is critical, given that anyone who voluntarily provides their cell number is automatically eliminated from the class list. *See* Zipprich Decl. at ¶ 6.

13. Moreover, in cases like Plaintiff's where the original creditor or prior collector provided the cell phone number, third-party discovery will be necessary to ascertain how these parties acquired the cell phone number.

14. Defendants have objected to the production of documents relating to detailed account records of the putative class members, specifically documents relating to debtors' consent to be called on their cellular telephones. In order to produce such information, an extensive manual review of the account information will be required, as described above. *See* Response to Document Request No. 12 (DE 36 at page 29 of 57) *and* Zipprich Decl. at ¶ 6.

15. In support of Plaintiff's Motion, Plaintiff argues that it needs the records now, prior to class certification, in order to establish numerosity. *See* Motion ¶ 35. This is the only reason Plaintiff cites for needing the information pre-certification, and the only justification for engaging in this mammoth undertaking now.

16. Plaintiff cherry-picks citations to *Sadler v. Midland Credit Management*, No. 06-cv-5045, 2009 U.S. Dist. Lexis 26771 (N.D. Ill. Mar. 31, 2009), in support of his argument that class information should be produced, but that case actually supports Defendants' position. Judge Pallmeyer had earlier *denied* the motion for class certification because Defendants' records were insufficiently detailed to allow for the class to be ascertained under the original class definition because, just as in this case, records from third-party debt sellers would need to be manually reviewed in order to ascertain the class list. *Sadler* DE 143 (attached as Exhibit B). Plaintiffs later amended their complaint and narrowed the class definition so that only one debt seller's records would be at issue. On the second motion for class certification, the Defendants again argued that determining the class would require a manual review of thousands of files. The Court disagreed that the burdens of the manual review on this much smaller scale outweighed Plaintiff's need for the information *post-certification,* but it recognized that producing the information would involve the arduous manual review described by Defendants and take considerable time, money, and effort to extract it, and would no doubt be

"administratively burdensome." *Sadler* DE 153 (attached as Exhibit C) at 3. *After* certification, Defendants were ordered to perform the burdensome task of producing class list documentation. *Id.* Importantly, undersigned counsel also conducted that search personally in defense of the *Sadler* case.

17. Like in *Sadler*, the arduous work of manually reviewing thousands of files in order to create a class list should occur only if and when the class is certified (which Defendants deny is appropriate). The class definition may well be altered, amended, narrowed, or even broadened should this case be moved into the Multi-District Litigation. It would not be an efficient use of the parties or the Court's time to begin that individual review when its contours may well change post-certification, or certification of the current putative class may even be denied, and especially where numerosity is not in dispute.

18. Plaintiff cites to *Donnelly*, 263 F.R.D. 500, an opinion on a motion to compel in a similar TCPA case, for the proposition that the class list is discoverable pre-certification. *See* Motion ¶ 39. But even in *Donnelly,* and the case it relies upon, *Fike v. The Bureaus, Inc.*, No. 09-cv-2558 (N.D. Ill.), the court recognized that the defendant was "between a rock and a hard place," that providing a list of the putative class members would be "burdensome" and that it will "take [defendant] time and effort to produce this material." *Donnelly*, 263 F.R.D. at 503-04 (quoting *Fike*).

19. Thus, none of the cases Plaintiff cites say anything other than that the class list is discoverable – and Defendants do not dispute that the appropriate form of the list, having gone through sufficient filters, *is* discoverable. Defendants merely object to producing that information now, at great time and expense, and prior to certification—which may never happen in the first instance. Other than the need to demonstrate numerosity, Plaintiff identifies no other

reason for needing class discovery now rather than subsequent to certification should it be granted.

20. Even if the Court overrules Defendants' objections and requires that the documents needed to establish a class list be produced prior to certification, it is still the case that, as the courts in *Sadler* and *Donnelly* recognized, there is simply no practical way for Defendants to produce such a list today, or even in 30 days. Producing such a list will require extensive coordination with third parties, development of new computer programs to access the information in Defendants' systems, manual review of account files, and cross-referencing of multiple data fields. Defendants have begun to move forward with that process by performing the investigation needed and conferring with the relevant individuals, but the review itself cannot be done as quickly as Plaintiff would like it to be.

### Plaintiff's Motion Is Moot With Respect To Interrogatory No. 54

21. Like in other areas of their Motion, Plaintiff disingenuously complains of the Defendants' assertion of a relevance objection to Interrogatory No. 54, which sought identification of the third-parties who provide the dialers licensed by the Defendants. Defendants objected that the use of the term "predictive dialer" was a legal conclusion, and this objection should be sustained for the reasons argued above. But Plaintiff's raise a relevance objection which Defendants have since waived – at the parties' July 21, 2011 Rule 37 meet and confer call, and again at the in-person settlement meeting on July 28, 2011, Defendants identified the parties from whom the dialers are licensed, and have likewise produced the contractual agreements Defendants have with these parties.

22. Accordingly, Plaintiff's Motion is moot with respect to Interrogatory No. 54, and it was moot prior to the time Plaintiff filed this Motion.

**Defendants Properly Responded To All Requests For Admissions**

23.     Plaintiff complains that Defendants responded to "numerous" Requests for Admission by stating that Defendants lacked sufficient knowledge to admit or deny, but this complaint is baseless.  As a threshold clarification, Defendants responded to only two of the Requests for Admission with a response that expressed a lack of knowledge, and in both cases no amount of "investigation" on Defendants' end would have clarified the issue[2]:

- RFA No. 29 asked Defendants to admit that the **Plaintiff** communicated with a third party, United Recovery Systems, LP.  Defendants are obviously without sufficient information or knowledge to confirm or deny that Plaintiff communicated with some third-party, and are under no obligation to investigate that fact – it should be something Plaintiff turns over in discovery.

- RFA No. 30 asked Defendants to admit that Plaintiff's telephone number was a cell phone number.  One of Defendants' defenses is that it did not know it was calling Plaintiff at a cellular number (*See* Answer ¶ 30) – Defendants did not know, and thus cannot admit or deny the fact.

**Sanctions Should Be Denied Because This Is The First Discovery Issue Brought To The Court, And Because Plaintiff Did Not File This Motion In Good Faith.**

24.     Sanctions are grossly inappropriate here no matter how the Court rules on the merits of Defendants' objections.  Defendants timely served responses to Plaintiff's Discovery Requests.  Documents were produced concurrently, and is ongoing, and Defendants' counsel has

---

[2] Plaintiff claims there was a third response claiming knowledge, RFA No. 16, but Defendants actually admitted the thrust of the Request. RFA No. 16 asked Defendants to admit the date and time of 30 separate calls that were allegedly made to Plaintiff on his cell phone. Defendants performed a diligent investigation and confirmed that the available lists of times called generally overlapped with Plaintiff's allegations, but could not do so for every single call. Moreover, the dialer belongs to a third-party, not Defendants, and Defendants do not maintain a record of every outgoing call made.  Therefore, Defendants could not admit to a minute-by-minute account of calls allegedly made because they are without sufficient information to do so, but Defendants admitted that at least one call had been made, addressing the thrust of the issue, and serving the Rule 36(a)(4) interests in "narrowing the issues in dispute." *See* Motion at ¶ 44 (quoting *Merix Pharm. Corp. v. EMS Acquisition Corp.*, 2010 U.S. Dist. LEXIS 98606, at *13 (N.D. Ill. Sept. 21, 2010)). Further, in keeping with the spirit of the rules, Defendants' counsel informed Plaintiff's counsel during the July 21, 2011 meet and confer that the call times generally overlapped and thus there was no serious dispute as to the approximate number of calls.  Finally, Defendants produced the call records that it did have which reflect the above information. *See* Zipprich Decl. at ¶ 5.

been more than diligent in investigating and producing documents as they become available. The Court has not issued any discovery orders that could have been violated. This Motion is the first time that Defendants' objections have even come before the Court.

25. Under such circumstances, at this early stage of the case, sanctions are completely unwarranted. *See, e.g., Federal Beef Processors, Inc. v. Royal Indem. Co.*, no. CIV. 04-5005-KES, 2008 WL 2845640 (D.S.D. July 18, 2008) (denying discovery sanctions where parties disputed when documents were made available for inspection, but finding that eventually making the documents available was "not consistent with an attempt to willfully or in bad faith deny defendants access to documents.").

26. Sanctions should be denied for the additional reason that Defendants' objections, even if ultimately overruled, were "substantially justified" (Rule 37(a)(5)(A)(ii)) and, even if the Court disagrees, this is the first discovery dispute brought before the Court, and there can be no contention that prior court orders regarding discovery have been ignored. "This factor alone militates against the entry of sanctions at this time." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 142-43 (S.D.N.Y. 1997) (quoting *Factor v. Mall Airways, Inc.*, 131 F.R.D. 52, 55 (S.D.N.Y. 1990)).

27. Even if the Court agrees with Plaintiff in some respects and overrules portions of Defendants' objections, fee-shifting is not appropriate here because Plaintiff's counsel failed to conduct a meet and confer ***in good faith*** as required by Rule 37. Plaintiff opened Rule 37 communications with an email stating that a Motion to Compel filing was imminent. *See* Exhibit D. In fact, counsel for Plaintiff represented at the presentment of the motion to reassign this matter to Honorable Judge Kocoras—which occurred prior to the Rule 37 conference here— that she had drafted and was planning to file a motion to compel and for sanctions in this matter.

Zipprich Decl. at ¶ 7. Plaintiff's counsel had no intention on attempting to meet and confer and work through any discovery disputes, and this fact alone is grounds for denying this Motion.

28. Even worse, on the meet and confer call itself, Plaintiff refused to provide definitions for legal terms used in the discovery responses, refused to even discuss Defendants' objection to producing class information prior to certification, and was unwilling to discuss or compromise on any discovery issue whatsoever. *See* Zipprich Decl. at ¶ 3.

29. Many, if not all, of these issues could have been resolved without the Court's intervention if Plaintiff's counsel were at all interested in doing so and, in fact, *were* largely resolved at the July 28, 2011 in-person settlement meeting, but Plaintiff's counsel chose to file this Motion anyway. Because Plaintiff's counsel failed to meet and confer in good faith as required by Rule 37, sanctions are not warranted, and the Motion should be denied. *See* Rule 37(a)(5)(A) ("But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action.").

**The September 28, 2011 Discovery Deadline Should Be Extended.**

30. As explained above, it simply is not realistic to complete discovery within three months in this large putative class action with many moving parts, involving international and third-party discovery, related cases, and largely unsearchable records. The issue of consent, in particular, can by necessity only be determined on an individualized basis.

**Conclusion**

Accordingly, Defendants respectfully request that the Court: (1) deny Plaintiff's Motion; (2) grant Defendants' Motion to extend the discovery deadline to a date to be discussed in open court; (3) award Defendants attorney's fees in defending this Motion brought in violation of Rule 37; and (4) for such further relief as the Court deems appropriate.

Dated: August 2, 2011                      Respectfully submitted,

**MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, AND ENCORE CAPITAL GROUP, INC.**

By:   <u>s/ Renee L. Zipprich</u>
Renee Zipprich (rzipprich@dykema.com)
Brett J. Natarelli (rzipprich@dykema.com)
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
Phone: 312-876-1700
Fax:    312-627-2302

Theodore W. Seitz (tseitz@dykema.com)
DYKEMA GOSSETT PLLC
Capitol View
201 Townsend Street, Suite 900
Lansing, Michigan 48933
Phone: (517) 374-9100
Fax:    (517) 374-9191

## CERTIFICATE OF SERVICE

I hereby certify that on **August 2, 2011**, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Curtis C. Warner
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Suite 560
Chicago, IL 60601
(312) 238-9820 – tel.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
Edelman Combs Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
312 739-4200

        s/ J. Richard Madamba

CHICAGO\3329887.2
ID\BJN - 097356/0103